(No. 4912— )

HENRY NAPUE, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 18, 1967.*

McCOY and MING, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; DANIEL KADJAN and PHILIP J. ROCK, Assistant Attorneys General, for Respondent.

DOVE, J.

This is a cause of action brought by claimant against respondent, State of Illinois, for damages under Sec. 8C of the Act creating the Court of Claims, which provides that the Court of Claims shall have jurisdiction to hear and determine:

"All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, the Court shall make no award in excess of the following amounts: For imprisonment of 5 years or less, not more than $15,000.00; for imprisonment of 14 years or less but over 5 years, not more than $30,000.00; for imprisonment of over 14 years, not more than $35,000.00; and provided further, the Court shall fix attorney's fees not to exceed 25% of the award granted."

On August 21, 1938, at approximately 3:00 A.M., in a Chicago cocktail lounge, a Chicago Police Officer was fatally wounded during an attempt to prevent an armed

robbery of the lounge and its patrons by four gunmen. In the melee, one of the robbers, Trussie Townsend, was killed and another robber, George Hamer, seriously wounded. In due course, Hamer was apprehended, charged with the murder of the policeman, convicted on a plea of guilty, and sentenced to 199 years in prison.

Several months later, Howard Poe was apprehended, tried and convicted of the murder of the same policeman, sentenced to death and executed. Subsequently claimant, Henry Napue, was arrested for the murder of the policeman, and on June 18, 1940, was indicted by a Cook County Grand Jury. Claimant entered a plea of not guilty. On August 22, 1940, claimant was found guilty of the murder of the policeman, and was sentenced to the Illinois State Penitentiary for a term of 199 years. The State's principal witness against Napue was George Hamer, who had previously pled guilty to a charge of murder of the same policeman, and who had been sentenced to the Illinois State Penitentiary for 199 years. Hamer testified at the trial that he had not been promised a reward or consideration for his testimony. Subsequent events proved that this denial was false, and that the Assistant State's Attorney who prosecuted Napue knew such denial to be false.

Thereafter, Henry Napue filed a post-conviction petition for release from prison on the ground that his conviction had been obtained by the known use of false testimony. The trial court denied Napue's petition. On appeal, the Illinois Supreme Court affirmed the decision of the trial court. On petition for certiorari, the United States Supreme Court reversed the denial of post-conviction relief, holding that the failure of the prosecutor to correct Hamer's false testimony, known to be so, de-

nied Napue due process of law, in violation of the 14th Amendment. Napue's conviction was set aside by the trial court, and the State's Attorney subsequently elected to dismiss the indictment. On March 7, 1960, Napue was released from custody, having been imprisoned since August 22, 1940.

Claimant thereafter filed this claim for compensation from the State of Illinois for "unjust imprisonment" during the period of 20 years from the date of his incarceration to the date of his release.

In order that claimant be entitled to an award from the State of Illinois for time unjustly served in prison, it is well settled that claimant must prove by a preponderance of the evidence (1) that the time served in prison was unjust; (2) that the act for which he was wrongfully in prison was not committed by him; and (3) the amount of damages to which he is entitled. *Jonnia Dirkans* vs. *State of Illinois,* Case No. 4904; *Munroe* vs. *State of Illinois,* Case No. 4913.

In the Dirkans case the Court held that a claimant attempting to recover an award for unjust imprisonment must prove his innocence of the "fact" of the crime for which he was imprisoned. The Court went on to state that in its opinion it was not the intention of the Illinois General Assembly to open the Treasury of the State of Illinois to inmates of its penal institutions by the establishment of their technical or legal innocence of the crimes for which they were imprisoned.

Claimant called three witnesses to testify in his behalf. Stella Dowery, the mother-in-law of claimant, testified that at the time of the robbery, claimant, his wife and two children lived in the apartment house where

she was the manager. She testified that on August 20, 1938 she went to bed about 11:00 P.M., and that at that time claimant, Henry Napue, was on the premises. She stated that she was awakened at about 3:00 A.M. by one Howard Poe, and that claimant left the house with Poe.

Lenwood Dowery, a brother-in-law of claimant, testified that on August 20, 1938 he lived in the same rooming house as claimant. He stated that on August 20, 1938 he was with claimant in front of the rooming house from 11:00 P.M. until about 12:30 A.M. on August 21, at which time he went to bed. He further testified that at about 3:30 or 4:00 A.M. he was awakened by Poe who was looking for claimant. He told Poe he thought claimant was upstairs. Fifteen or twenty minutes later he said he heard someone running down the stairs.

Joseph Dowery, a brother-in-law of claimant, testified that on August 20, 1938 he lived in the same rooming house with claimant. That on August 20, 1938 he got home about 11:00 P.M., and that claimant got home about 12:00 M. or 12:30 A.M. on August 21, 1938. He stated that he played cards with claimant, claimant's wife and another girl until about 2:00 A.M., when claimant and his wife went to their apartment.

Henry Napue testified that on the night in question he played cards with his wife, Joe Dowery and another girl. That he went up to his apartment to see if he could get one of his children who had been crying to go to sleep. He stated that he fell asleep himself, and that the next thing he remembers is being awakened by Howard Poe who wanted him to help him get George Hamer to a doctor, because Hamer had been shot in a crap game. He testified that he went with Poe to take Hamer to a

doctor, and that it was not until the next morning that he learned of the robbery. The next evening claimant left Chicago, and went to Newark, New Jersey, where he remained until he was apprehended. He stated that he did not know where his wife was living at the present time, and that he had made an effort to find her, but that neither her mother nor brothers knew where she lived.

George Hamer testified on behalf of respondent. He stated that at the criminal trial of Henry Napue he had testified that Napue was an accomplice in the robbery. He further testified that at the present time he had no recollection of being at the robbery or being involved in the robbery himself, and that he had no recollection of Napue being involved in the robbery.

It must be noted by the Court that the three witnesses presented by claimant, and to which claimant is related by marriage, were not with, and did not see claimant after 2:00 A.M. on the night of the robbery. The one person who presumably could have testified as to claimant's whereabouts at the time of the robbery, claimant's wife, was not called to testify by claimant who stated that he was unable to locate his wife. The testimony of George Hamer lends no support to claimant's testimony that he was not involved in the robbery, inasmuch as Hamer testified that at this time he had no recollection that he was even involved in the robbery.

The denial of due process, which is the basis of the Supreme Court's reversal of the original criminal case, does not conclusively establish the claimant's innocence in fact of the crime for which he was imprisoned. The right of a claimant in this Court to an award under Sec. 8C of the Court of Claims Act is predicated on such in-

nocence. It is the opinion of this Court that claimant has failed to prove by a preponderance of the evidence that he is innocent of the fact of the crime for which he was imprisoned.

The claim is hereby denied.