LOUIS QUALLS and MATTHEW C. MOORE, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinon filed October 10, 1968.*

H. ERNEST LAFONTANT, Attorney for Claimants.

WILLIAM G. CLARK, Attorney General; DANIEL KADJAN, Assistant Attorney General, for Respondent.

DOVE, J.

This is a cause of action brought by claimants against respondent, State of Illinois, for damages under Sec. 8C of the Act creating the Court of Claims, which provides that the Court of Claims shall have jurisdiction to hear and determine:

All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, the Court shall make no award in excess of the following amounts: For imprisonment of five years or less, not more than $15,000.00; for imprisonment of fourteen years or less but over five years, not more than $30,000.00; for imprisonment of over fourteen years, not more than $35,000.00, and provided further, the Court shall fix attorney's fees not to exceed 25% of the award granted.

Claimants, Louis Qualls and Matthew C. Moore, were jointly indicted for the crime of forcible rape of Isabel Preusser by the April Term of the Cook County Grand Jury. Both claimants entered a plea of not guilty to the charge. Claimants were tried on the charge before a jury during the month of July, 1959, and found guilty. Both claimants were sentenced to imprisonment in the Illinois State Penitentiary for a term of 25 years. Claimants subsequently filed their Writ of Error with the Supreme Court of Illinois, and, on January 20, 1961, the Supreme Court of Illinois reversed the Criminal Court of Cook County, and found:

A. That there was no proof that the prosecuting witness was paralyzed by fear, or that she was overcome by superior strength.

B. That there was no proof that she offered any resistance.

C. That there was no proof of any force exerted on prosecutrix.

D. That there was no proof that prosecutrix was afraid.

Claimants were subsequently released from the Illinois State Penitentiary having been imprisoned from July 1, 1959 to January 20, 1961.

Claimant, Louis Qualls, testified in this cause that, on April 25, 1959, at about 1:00 A.M. he went into Al's Celebrity Lounge, where Isabel Preusser was sitting with a white man at the bar. Claimant bought them both a drink. The white man introduced Mrs. Preusser as his cousin. The woman then asked claimant if he wanted some companionship, and he told her, "I told you I am in a dull mood." Claimant testified that she asked

him for $7.00 for the man who was with her whose name was Raymond. Qualls then gave the $7.00 to Raymond, and they left the lounge and went to Raymond's vehicle, which was parked near the corner. As Raymond started to get in the car and sit down, he saw two men that he had been talking to in the tavern. Raymond jumped out of the car, a couple of words were said, and he fled. After that the woman got out of the car, and said to Qualls "Don't leave me, I don't want you to leave me." Qualls and the woman then walked across Cottage Grove Avenue from east to west. He testified that the woman walked with him voluntarily from Cottage Grove Avenue to South Park Avenue, which was approximately four blocks. At South Park Avenue he and the woman got into a cab. In the cab claimant said to the driver, "I have been a hero, and I want you to see what I had to be hero with, what I had to defend myself with." Then he stated that he showed the cab driver a little pen knife, and at that the driver and the woman laughed. Claimant testified that they left the cab, and walked up to his apartment, rang the bell, and the other claimant, Matthew C. Moore, opened the door. The three of them then went into the kitchen. In the kitchen all three had coffee with some Scotch mixed with it. In about an hour the woman excused herself, and went into the living room-bedroom combination for about 10 or 15 minutes, and then called Qualls and said, "Well it is getting late, you had better get something started." She undressed, and got on the bed saying, "Well, I can't be here too long." Qualls then testified that he got undressed, got into bed, and had sexual intercourse with her. He stated that at no time did he threaten her, and that she undressed herself voluntarily. Later Qualls put on his trousers, and came into the kitchen. The woman followed

a few minutes later, and said, "Where's my coffee?" At that time she was completely nude. Qualls testified that the woman later left telling them that she could catch a bus home.

Claimant, Matthew C. Moore, testified that during the time the woman was in their apartment he asked her if she wanted to phone her home, and she said that she didn't. He further testified that, when Qualls went to the bathroom, she suggested to him that they go into the other room together, which they did. She kept requesting him to go to bed with her, which finally he did. He stated that he had sexual intercourse with the woman once, but that he never threatened her, struck her, or used any type of force towards her. At one time during the period in question, Moore testified that the woman came into the kitchen, and asked him if he had a cigarette, and he said, "No." He then testified that he went out to purchase some cigarettes, leaving the door unlocked. When he returned, the door was still unlocked.

Edward Day testified on behalf of claimants that he was employed at Al's Celebrity Lounge located at 823 East 39th Street, Chicago, Illinois, as a bartender and manager. He testified that at about 2:30 in the morning on April 25, 1959, a white man and a white woman came into the place and sat down. He made it a point to watch them because they were the only white people in the Lounge, everyone else being colored. Claimant Qualls came in about 15 minutes later, and joined them at the bar. The white man ordered a round of drinks, and paid for them. They sat there for about 10 minutes, then all three left. Edward Day identified Isabel Preusser as the white woman who was in Al's Celebrity Lounge on April 25, 1959.

Controverting the testimony of claimants was the testimony of Isabel Preusser who testified on behalf of respondent that on the morning of April 25, 1959, at about 2:00 A.M. she went with her husband in their automobile to 39th and Cottage Grove Avenue, Chicago, Illinois, to purchase some barbeque ribs. When they arrived at the establishment they got out of their car, and found that the place was closed. When they returned to their car two men came up to her husband's side of the vehicle, pulled him out, and said something. He pulled himself away and ran. At that time he said, "Lock the door." She then testified that Qualls came up to her side of the vehicle, and said, "I'll take you to your husband." He took her out of the car, and walked her toward a gas station where her husband had gone to call the police. He grabbed her arm while he was walking with her. She stated that she did not walk with him of her own free will. At South Park Avenue Qualls hailed a cab, which stopped. He opened the door, took her hand, and put her in the cab. When asked why she didn't speak to the cab driver about her predicament, she gave as a reason, that he was colored also, the same as Qualls. They left the cab and went to Qualls' apartment. The door was opened by claimant Moore. Inside the apartment they took her into the kitchen. They asked her to sit down, and gave her a cup of coffee, which she took because she was frightened and nervous. She told them she would like to go home. Qualls told her to go into the other room, and take her clothes off. When he arrived in the bedroom he laid the open knife on the dresser, and stood by it as she took off her clothes. He then ordered her to lie down on the bed, and he took off his clothes, and had sexual relations with her. When he finished he laid on

the bed beside her, and then claimant Moore had sexual relations with her. When he was through, Qualls again had sexual intercourse with her. Both men alternated in having sexual intercourse with her over a period of two or three hours. She testified that she did not willingly permit these acts, and that at one time Qualls hit her in the face, and threatened her that "she could easily be found cut up in an alley." She said that she was afraid to use the telephone in the apartment because there was always somebody standing near it. Also there were two knives lying in front of the telephone, a white handled one and another. She made no attempt to leave the apartment because someone was always near her. She said that she never told claimants that she did not want to have intercourse with them, but did tell them that she wanted to go home to her children, but Qualls would not listen. She said she begged claimant Moore to let her go home, and finally he agreed. She told him that she didn't have any car fare, and he gave her fifty cents. She further testified that Moore did not leave the apartment at any time while she was there, and she never asked Moore to purchase cigarettes for her. She took a bus home and found that the babysitter had taken her children to her mother-in-law. She then went to her mother-in-law's home, which was a block away, and told her what happened. She was then taken to the police station where she reported the incident.

She testified further that, when she was walking down the street with claimant Qualls, he threatened her with an open knife, which was approximately four or five inches in length.

Officer Raymond Krall, who was called to testify on behalf of respondent, stated that, on April 25, 1959, at

about 8:00 A.M., Isabel Preusser came into the Prairie Avenue Station, and reported that she had been kidnapped and raped. He and several other officers went to the house where the incident occurred, and saw claimmant Moore coming down the stairs. Mrs. Preusser identified him as one of her assailants. The officers then went into the apartment, where they found claimant Qualls asleep, and arrested him. In the apartment they found a pearl handled knife, which had a blade about four inches in length.

In two previously decided cases, *Monroe* vs. *State of Illinois,* opinion No. 4913, and *Jonnia Dirkans* vs. *State of Illinois,* opinion No. 4904, this Court has held that one of the primary issues to be determined in a case brought under Section 8C of the Court of Claims Act is whether the claimant was innocent of the crime for which he was imprisoned. The burden is on the claimant to prove by a preponderance of the evidence that the act for which he was wrongfully imprisoned was not committed by him. Claimant must prove his innocence of the "fact" of the crime.

In this case claimants seek to prove their innocence of the crime for which they were imprisoned by their own uncorroborated testimony to the effect that Isabel Preusser voluntarily submitted to the acts of sexual intercourse with them, and that there was no force or threats of force exerted on Isabel Preusser.

The quantum of proof, which claimants must present to this Court to prove their innocence of the crime for which they were imprisoned thereby entitling them to an award of damages from the State of Illinois for time unjustly spent in prison, is greater than the proof required to convince a Court that there was a reason-

able doubt as to their guilt of the crime. In the first instance they must prove their innocence of the "fact" of the crime by a preponderance of the evidence, while in the second instance they must only present sufficient evidence to raise a reasonable doubt of their guilt of the crime charged.

It is the opinion of this Court that claimants have failed to prove by a preponderance of the evidence that they are innocent of the "fact" of the crime for which they were imprisoned. It is the further opinion of this Court that the Legislature of the State of Illinois did not intend, when it enacted Sec. 8C of the Court of Claims Act, that this Court make awards to claimants whose only proof of their innocence of the "fact" of the crime is their own uncorroborated testimony.

The claims of Louis Qualls and Matthew C. Moore are hereby denied.