(No. 5293— )

ROBERT L. CONROY, Claimant, *vs* STATE OF ILLINOIS, Respondent.

*Opinion filed February 24, 1969.*

ARVEY, HODES AND MANTYNBAND, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; SHELDON K. RACHMAN, Special Assistant Attorney General, and MORTON L. ZASLAVSKY, Assistant Attorney General, for Respondent.

DOVE, J.

This is a cause of action against the State of Illinois for damages under Sec. 8C of the Act creating the Court of Claims, which provides that the Court of Claims shall have jurisdiction to hear and determine:

"All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, the Court shall make no award in excess of the following amounts: For imprisonment of 5 years or less, not more than $15,000.00; for imprisonment for 14 years or less but over 5 years, not more than $30,000.00; for imprisonment of over 14 years, not more than $35,000.00; and provided further, the Court shall fix attorney's fees not to exceed 25% of the award granted."

Claimant, Robert L. Conroy, was convicted in October of 1937 in the Criminal Court of Cook County, Illinois

after a jury trial for the crime of rape, and was sentenced to the Illinois State Penitentiary for a period of 199 years.

Claimant was thereafter confined in the Illinois State Penitentiary from October 23, 1937 until June 7, 1965. Claimant filed a petition for a Writ of Habeas Corpus in the United States District Court setting forth that he had been denied due process of law at the time of his arrest; that the Chicago police held him prisoner for 36 hours in an abandoned police station before he confessed to the alleged crime; and, that his confession was procured by physical abuse. The petition for Habeas Corpus further stated that there was a 15 day delay after his confession before he was brought before a magistrate or before he was examined by a doctor.

After a long and lengthy hearing on the petition for a Writ of Habeas Corpus, the Federal District Court ordered a new trial for claimant, but the State's Attorney of Cook County, Illinois decided not to retry claimant, and he was released from custody.

Claimant called Anna Brasy, victim of the rape, as an adverse witness under Sec. 60 of the Illinois Civil Practice Act to testify on his behalf. She testified that on the morning of November 20, 1936, at approximately 3:00 o'clock, she was awakened when she heard the door to her bedroom open, and saw a man bend over her. She screamed. The man put a knife at her throat, and said, "If you scream, I'll kill you." He then took the bed covers off, made her take off her pajamas, and raped her. At the time he entered the bedroom the light in the room was not on.

In addition to raping her, her assailant committed other acts of sexual assault upon the person of Anna

Brasy, and also tortured her by cutting her on her arms and legs with the knife. The sexual attacks and the torturing lasted for about an hour. Anna Brasy testified that during this hour she remained conscious, but did not scream because she was paralyzed with fear.

Before her assailant left, he demanded money. Anna Brasy testified that she went into a closet where she had hidden a few dollars, and gave them to him. At that time she turned on the light in her bedroom, and for the first time saw her assailant. She further testified that her assailant spoke with a lisp, as if he were tongue-tied. After she gave her assailant the money, he struck her on the cheek with his fist, which rendered her unconscious.

Anna Brasy testified that, when she regained consciousness, she woke her mother and brother. Her brother called the police, and they took her to Ravenswood Hospital where she stayed for six weeks. During her stay in the hospital ten suspects were brought in for identification, but she did not identify any of them. She further testified that none of them looked like her assailant, and none spoke with a lisp.

On September 14, 1937, the police took Anna Brasy to the State's Attorney's office in the County Building where she met claimant. As soon as she saw him, she recognized him as her assailant. Later she identified him in a line-up. She also identified him at the time of his trial. On each occasion that she identified him she had no doubt that claimant was the man who had tortured and raped her on November 20, 1936.

Robert L. Conroy, claimant, testified in his own behalf that between September, 1936 and April, 1937 he was not present in the State of Illinois. He testified

that during this time he was working in the floral business of his wife's uncle in Washington, and that on August 14, 1937 he was arrested by the police in his mother's apartment on a theft charge. He was taken to the Canalport Police Station from which he escaped when he found his cell door unlocked, and noticed nobody around.

Four weeks later, on September 12, 1937, he was arrested again by the police, taken to the Irving Park Police Station, and booked. From there he was taken to the Canalport Police Station where claimant was questioned concerning the rape of Anna Brasy. He stayed at the Canalport Station for two days, and then was taken to the Criminal Court Building, and questioned further. Claimant then testified that the police beat him with their fists while he was handcuffed, and that to stop the beating he promised to sign a confession.

Subsequently he was taken to the State's Attorney's Office in the County Building. Anna Brasy was present when he arrived, and identified claimant as her assailant. At this time a statement containing his confession to the rape of Anna Brasy was read to claimant. The statement was transcribed, and claimant signed it. Claimant was then returned to the scene of the crime where he participated in the re-enactment of the crime.

At his criminal trial in 1937, and at the hearing in the instant case, claimant produced no alibi witnesses to support his contention that he was in Washington at the time of the crime. He never requested his wife's uncle, Philip Caruso, for whom claimant allegedly worked between September, 1936 and April, 1937, to testify on his behalf, although he considered him a good alibi witness. His wife was present at the criminal trial, but was not called to testify for him.

.

In two previously decided cases, *Monroe* vs. *State of Illinois,* Case No. 4913, and *Jonnia Dirkans* vs. *State of Illinois,* Case No. 4904, this Court held that one of the primary issues to be determined in a case brought under Section 8C of the Court of Claims Act is whether claimant was innocent of the crime for which he was imprisoned. The burden is on claimant to prove by a preponderance of the evidence that the act for which he was wrongfully imprisoned was not committed by him. Claimant must prove his innocence of the "fact" of the crime.

In this case claimant seeks to prove his innocence of the crime for which he was imprisoned by his own uncorroborated testimony that at the time the crime was committed he was not in the State of Illinois, but was in Washington working for his wife's uncle. Claimant introduced no evidence at the original criminal trial, or in the hearings in the instant claim to support his alibi. Contradicting the testimony of claimant that he is innocent of the crime is the testimony of Anna Brasy, who was called as an adverse witness by claimant. Anna Brasy testified in detail as to the various acts committed upon her by claimant herein. At the conclusion of her testimony in the instant case claimant was brought into the hearing room with his brother, and the victim, Anna Brasy, positively and without hestitation identified claimant as her attacker.

It is the opinion of this Court that claimant has failed to prove by a preponderance of the evidence that he is innocent of the "fact" of the crime for which he was imprisoned.

It is the further opinion of this Court that the legislature of the State of Illinois did not intend, when it enacted Sec. 8C of the Court of Claims Act, that this

308

Court make awards to claimants whose only proof of innocence of the "fact" of the crime is their own uncorroborated testimony. This is especially so in this case where there is testimony, which tends to incriminate claimant in the commission of the crime charged.

Claimant's claim is hereby denied.