(No. 5136—

Essau Martin, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed August 14, 1968.*

Arthur J. O'Donnell, Attorney for Claimant.

William G. Clark, Attorney General; Philip J. Rock and Daniel Kadjan, Assistant Attorneys General, for Respondent.

DOVE, J.

This is a cause of action brought by claimant against respondent, State of Illinois, for damages under Sec. 8C of the act creating the Court of Claims, which act provides that the Court of Claims shall have jurisdiction to hear and determine:

All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, that the Court shall make no award in excess of the following amounts: For imprisonment of five years or less, not more than $15,000.00; for imprisonment of fourteen years or less, but more than five years, not more than $30,000.00; for imprisonment of over fourteen years, not more than $35,000.00; and, provided further, the Court shall fix attorneys fees not to exceed 25% of the award granted.

Claimant, Essau Martin, was arrested on August 17, 1959 by police officers of the City of Chicago, and held in custody without bail on the charge of murder of one Eula Lloyd. On October 20, 1959, a true bill of indictment was returned charging claimant with the murder of Eula Lloyd, and the cause was tried without a jury in March of 1960. On March 23, 1960, a finding of guilty was rendered to the charges contained in the indictment. Claimant was sentenced to the Illinois State Penitentiary for a term of 99 years. A timely Writ of Error was filed with the Supreme Court of Illinois, and the judgment of the Criminal Court of Cook County was reversed, and claimant was released from prison on March 2, 1963.

On August 17, 1959, Essau Martin lived at 6643 Wabash Avenue, Chicago, Illinois, with his wife and five children. He was 24 years old, and employed at the Argo Refinery, Argo, Illinois, earning approximately $100.00

per week. Eula Lloyd was claimant's sister-in-law. She was separated from her husband, and lived with an aunt, Beatrice Thomas, at 741 West 59th Street, Chicago, Illinois.

A few days prior to August 17, 1959, Eula Lloyd went to claimant's home, and asked him if he would drive her to look at an apartment she wanted to rent. They went to an address at or near 61st and Yale Streets, and following that they drove around and stopped at a liquor store at 103rd and Indianapolis Boulevard where claimant purchased a bottle of liquor and six cans of beer. They both drank the liquor, and drove to 31st Street and the Lake where they parked and had sexual intercouse on two occasions. Sometime around midnight they drove home, parked a block from claimant's house, and both fell asleep in the car. At daybreak claimant awoke, and Eula Lloyd was gone. Claimant worked that day, and did not see Eula Lloyd until Sunday evening when she returned to his house, and asked if he would drive her to the Damen Avenue Welfare Office on Monday morning. Eula Lloyd returned Monday morning, and she and claimant proceeded to her apartment where she was to change clothes for the trip downtown. On the way they stopped and purchased a half pint of gin and a quart of beer.

Claimant and Eula Lloyd arrived at her apartment at about 8:30 in the morning, and commenced to enter into a drinking and sex orgy. About 6:20 that evening, August 17, 1959, Beatrice Thomas, Eula Lloyd's aunt, came into the apartment. She found the decedent, Eula Lloyd, lying in a bed, clothed only in a half slip, and bleeding heavily from the vagina, while the claimant fully dressed, except for his shirt, was "passed out" on the bedroom floor. The aunt summoned a police ambulance to take the decedent to the hospital. Her death

occurred the following day, and, according to the testimony of the pathologist who performed an autopsy, death was caused by Boeck's Sarcoidosis of the lungs, liver and spleen, contributed to and aggravated by lacerations of the anus and rectum, which resulted in an infection of decedent's belly.

At claimant's first trial on the criminal charge, there was introduced into evidence a statement of defendant given at the time of his arrest to the effect that claimant and Eula Lloyd had engaged in a "savage", "wild" and "wicked" affair, and that he had "just got evil" while drinking and engaging in sex play with the decedent, and had put his hand into her vagina. At the hearing conducted in connection with this cause, claimant stated he did not place his hand in the decedent's vagina, nor did he place his finger, hand or any blunt instrument in the decedent's anus.

Dr. Joseph E. Campbell was called as a witness on behalf of claimant. He stated that he was a forensic pathologist, and that he performed an autopsy on the body of Eula Lloyd. His examination revealed tears extending into the rectum, which resulted in tearing of the tissues surrounding the rectum with bleeding and infection extending throughout decedent's belly. In addition, there was an acute infection and tearing or hemorrage of the rectum with extension of the infection throughout the belly cavity. Smears of the mouth, vagina and rectum were examined, and sperm were found in the smears of the mouth and vagina. He stated that Boeck's Sarcoidosis is a progressive disease, and can result in death. In his opinion, the cause of death was due to Boeck's Sarcoidosis, contributed and aggravated by the tears of the anus and rectum, which had caused an infection of the belly. The infection in the belly was not

protracted. It was an acute infection of less than one or two days duration. The pathologist testified that the lacerations of the rectum and anus could not have resulted from a fall, but could have resulted from acts of sexual intercouse per anus. The pathologist testified that, but for the tears of the anus and the rectum introducing infection into the belly cavity, Eula Lloyd would not have died as soon as she did. In his opinion the injury to the anus and rectum unquestionably caused Eula Lloyd's death. He further stated that, in his opinion, Eula Lloyd was not in the midst of her menstruation.

Thomas Cunningham was called as a witness on behalf of respondent, and testified that on August 17, 1959 he was a police officer of the City of Chicago, and was a witness to certain statements made by claimant to the effect that he had inserted his hand and arm to a point approximately two inches below the elbow joint into the vagina of the decedent.

Beatrice Thomas was called as a witness on behalf of respondent, and testified that, when she found the deceased on August 17, 1959, there was a gash over her eyebrows, fingernail scratches on her throat, and a bruise at the base of decedent's spinal cord. She further testified that there was blood running down the decedent's legs; that the towels in the bathroom were bloody, as was the bathtub; that there was a string of blood on the couch and dining room chairs, as well as the kitchen chairs; and, that there was considerable blood on the mattress where Eula Lloyd was lying.

Under the law in Illinois, claimant, in order to be entitled to an award for unjust imprisonment, must prove by a preponderance of the evidence (1) that the term served in prison was unjust; (2) that the act for

which he was wrongfully imprisoned was not committed by him; and, (3) the amount of damages to which he is entitled. *Jonnia Dirkans* vs. *State of Illinois,* No. 4904, (opinion filed on February 25, 1965.) *Munroe* vs. *State of Illinois,* No. 4913, (opinion filed on April 7, 1966).

In the Dirkans case, the Court held that a claimant attempting to recover an award for unjust imprisonment must prove his innocence of the "fact" of the crime for which he was imprisoned. Claimant contends that his innocence has been determined by the Illinois Supreme Court. In the Supreme Court opinion setting aside the conviction of the Cook County Criminal Court, the Court stated:

"Upon consideration of the entire record, we conclude that grave and substantial doubt exists both as to the criminal agency and the cause of death. Under the circumstances, it becomes our duty to reverse the judgment of the conviction entered by the Criminal Court of Cook County."

The quantum of proof, which claimant must present to this Court to prove his innocence of the crime for which he was imprisoned thereby entitling him to an award of damages from the State of Illinois for time unjustly spent in prison, is greater than the proof required to convince a judge of an Appellate Court that there was reasonable doubt as to his guilt of the crime charged. In the first instance, claimant must prove his innocence of the "fact" of the crime by a preponderance of the evidence, while in the second instance he must only present sufficient evidence to raise a reasonable doubt of his guilt of the crime charged.

It is the opinion of this Court that the State's failure to sustain its burden in the criminal prosecution, that is, to prove guilt beyond a reasonable doubt, does not in itself amount to proof of the innocence of claimant of the

"fact" of the crime by a preponderance of the evidence. This is especially so in a case such as this, where claimant's evidence of his innocence of the crime is his own uncorroborated testimony, and where there is testimony and evidence in the record tending to incriminate claimant of the crime for which he was charged.

It is the opinion of this Court that claimant's evidence, consisting chiefly of his own uncorroborated testimony, does not sustain claimant's burden of proving by a preponderance of the evidence his innocence of the "fact" of the crime for which he was imprisoned, and thereby entitled him to recover damages from the State of Illinois for time unjustly spent in prison.

Claimant's claim is, therefore, denied.