(No. 5464

JEROME TYLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed October 19, 1972.*

GROSSMAN, KASAKOFF, MAGID AND SILVERMAN, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL R. WEXLER, Assistant Attorney General, for Respondent.

PERLIN, C.J.

Claimant seeks recovery of $15,000 pursuant to the following provision of the Court of Claims Act (8C) which provides that the Court of Claims shall have jurisdiction to hear and determine:

"All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided the Court shall make no award in excess of the following amounts: For imprisonment of 5 years or less, not more than $15,000. . ."

The evidence introduced at the hearing reveals the following: Claimant, Jerome Tyler, was arrested on

December 31, 1963, on charges of robbery and rape. The offense allegedly occurred on November 16, 1963. On March 24, 1964, he was tried without a jury, found guilty of the charges and was sentenced to the Illinois State Penitentiary for a period of not less than 10 nor more than 20 years for each crime, both sentences to run concurrently. After having served two years, eight months and twenty-eight days, he was released from prison on December 22, 1966.

The evidence reveals that during claimant's incarceration, his friend, Howard Burks, contacted the Office of the Cook County Public Defender, and gave them information that the claimant was with Burks and several others at the time that the robbery and rape allegedly occurred.

An investigation which was then carried out by the State's Attorney's Office established that the parties responsible for the crimes in question were Abraham Barker, Willie Stephens and Clifton Cates; that Abraham Barker entered an apartment occupied by one Oliver Carter and Eleanor Divers, committed the rape and robbery, taking a hi-fi set, and left while Clifton Cates and Willie Stephens waited outside. The investigation was made by Sheldon Schapiro, an Assistant State's Attorney and Frank Butler, Jr., a detective assigned to the State's Attorney's Office.

As a result of the investigation, a motion that a new trial be granted to claimant was made by the Public Defender's Office. The State's Attorney's Office confessed error and agreed to the granting of a new trial. After the order granting a new trial was entered, the State moved to nolle prosse the charges against the claimant, confessing that claimant was innocent of the charge, and the claimant was released from custody.

Schapiro testified as follows: He interviewed claimant in the Joliet Penitentiary, accompanied by Officer Butler and a court reporter. The claimant maintained his innocence and stated that the male complainant "had it in for him" because he had taken a girl friend away from him. Tyler, the claimant, said that his lawyer had instructed him to testify to a false alibi or he would be convicted. In the course of the investigation, it was discovered that the person who had committed the rape and robbery had a scar on his neck. Willie Stephens, who was not charged with the robbery or rape, came to Schapiro's office and admitted that he was involved in the crime. The statement and admission was received in evidence. Stephens stated that he was with a Mr. Barker, as well as some other individuals, on the night the rape and robbery occurred. None of them was Jerome Tyler. Stephens, Barker and the others went to the male complainant's house. Barker went upstairs with a toy gun and when he came down, he had a hi-fi set. During the interview it was discovered that Stephens had the same attorney as Tyler did at the time of Tyler's trial.

A statement of Charles Howard was obtained by Schapiro in which Howard testified that Stephens, Barker, and a man named Cates entered his apartment on the night of the robbery and that after some negotiation with reference to the hi-fi set, the set was brought in and Howard paid them for it. It was later recovered by Officer Butler and was identified by the male complainant as the one stolen from him. Howard also told Schapiro that Jerome Tyler had nothing to do with the transaction. Further investigation showed that Barker had an extensive criminal record and had left town right after the rape and robbery. They then interviewed the male complainant, one Oliver Carter, who steadfastly maintained that Tyler had robbed him and raped the female complainant.

Schapiro and Butler also interviewed the female complainant, Eleanor Divers, who stated that Jerome Tyler was not the party who had raped her, and that she had testified that he was on the instructions of her boyfriend, the male complainant. She stated that the person who attacked her had a scar on his neck.

Schapiro stated that when Willie Stephens made his statement, he was advised that the statute of limitations had expired on the crimes alleged in the original indictments. Schapiro also told Stephens that if he chose to make a statement, it could be used against him in court and Stephens said he understood that.

The attorney who represented Tyler at the time of his trial also represented Stephens who was a suspect in the case, and the alibi to which Tyler testified exculpated Stephens of any involvement in the robbery and rape. That the attorney represented one client to the detriment of another is based on information given by Tyler to Schapiro. Schapiro had no knowledge of whether Stephens, Barker and Howard were social friends of Tyler.

Schapiro further testified that, in his opinion, claimant was innocent of the crime for which he was charged.

Howard Burks testified that he was claimant's friend and that on the night in question, claimant, Willie Hayes and Ernest Richards drove one Jessie King home. They proceeded to 744 Bowen Avenue, and were sitting in the car drinking when several police cars arrived in the vicinity where they were parked. Five minutes later, he saw Clifton Cates, Abraham Barker and Willie Stephens running up the street. They saw Burks' car and came over. The three said they hadn't done anything, but would tell them about it "at the party." All of the above mentioned people apparently went to a party at Jessie King's. Burks testified that Abraham Barker told him that he went upstairs to Oliver

Carter's apartment and robbed him of his hi-fi set, but that he left Cates and Stephens downstairs because Oliver Carter knew them. Burks further testified that Abraham Barker told him that he was going to sell the hi-fi set to Charles Howard. Burks stated that on the night the crimes were committed, claimant was never out of his presence from the time they left work until after Barker, Cates and Stephens came to the party.

Burks was questioned by the police after claimant was arrested and he stated that he told them "just what I have said here." Burks was never again contacted by the police, nor did he have any contact with claimant Tyler until he was released from prison. Burks stated that a month before the trial, he received a letter from Tyler asking Burks to get "all the help I could, all the people that were involved, and have them testify in his behalf so he could be released because we knew that he didn't have anything to do with the crimes."

Burks stated that neither he nor any of the other persons who were in the car or at the party were called as witnesses. Burks said that after he heard Tyler had been convicted and sentenced for the crime, he told claimant's mother that "we would do everything we could to get the man released." Burks further testified that he knows that Jerome Tyler does not have a scar on his neck and that Abraham Barker does have a scar on his neck. On cross examination, Burks testified that he told police that Barker was the man they were looking for on the same day that they picked up Jerome Tyler. Burks stated that he worked with Willie Stephens, Clifton Cates, Arthur Sims and Oliver Carter, and that these people and Jerome Tyler and Abraham Barker were friends. Burks said that he was present at the court trial of Jerome Tyler and that he told the attorney for Tyler that he wished to testify. Tyler's attorney refused to call him and said "he already had his

case." Burks stated that he was unable to hear all the testimony at the trial because he was "too far back." Burks stated during cross examination, that he was not aware that he could have gone to the State's Attorney with his statement.

Frank Butler, Jr. testified that he was a Chicago police officer for 11 years and had been assigned to the State's Attorney's Office for 8 years. He stated he was assigned by his superior to re-investigate the claimant's conviction; that he contacted one Willie Stephens and interviewed him in a tavern. The next day, Willie Stephens came to the State's Attorney's Office where he gave a statement that did not implicate Jerome Tyler in the incident, but he did implicate Clifton Cates and Abraham Barker. Butler took a statement from Eleanor Divers who, when shown a picture of claimant, stated that he was not the man who raped her. When she was shown a picture of Abraham Barker, she stated that she was not sure if it was he. Officer Butler further testified that he interviewed Oliver Carter, the male complainant, who maintained that Jerome Tyler committed the crimes in question. Butler examined Jerome Tyler at the Illinois State Penitentiary in the presence of Sheldon Schapiro and Assistant Public Defender, John Doherty, and concluded that claimant does not have a scar on his neck. Butler testified that he also interviewed Abraham Barker who was on probation for robbery and that Barker refused to give a statement, but that he noted that Barker had a scar on the muscle part of his shoulder, on the left side of his neck. Butler's opinion is that claimant is innocent.

Jerome Tyler, called as a witness on his own behalf, denied any involvement in the crime for which he was indicted and convicted. He testified that he was in an automobile in front of 744 Bowen Avenue when he noticed

police squads and saw Willie Stephens, Clifton Cates and Abraham Barker running towards the car. They all went up to the party at Jessie King's apartment. On cross examination, he stated that at his trial he testified to an alibi that he was sitting in a bar at 41st and Cottage Grove Avenue, and that he was told to testify to this alibi by his attorney.

He further testified that he was Assistant Manager of an F. W. Woolworth store and that prior to his arrest, he had worked for the Moffett Portrait Studio from 1957 to 1959 at $125.00 per week; that he had attended mechanic transmission school and just prior to his arrest was working as an automatic transmission specialist earning an average of $175.00 per week, and was self employed from 1957 to 1963, earning approximately $9,000 per year. Claimant testified that he was innocent; that he had known Oliver Carter for about 15 years before November 16, 1963; and that claimant was with Howard Burks on the evening of November 16, 1963, from 6:00 p.m. until 11:00 p.m. Claimant said his attorney at the time of his trial was Woodrow Hodge. Mr. Hodge did not see the claimant for the months he was in jail prior to the trial. The only time he saw him was when Mr. Hodge told him that he should tell the story he instructed him to tell that claimant was in a bar on 41st and Cottage Grove. Claimant stated that he said exactly what his attorney instructed him to say. He was aware that he was lying. Rose Peterson and Willie Stephens testified for claimant at the trial. Claimant did not ask Willie Stephens to testify. When Stephens gave his testimony, claimant thought that Stephens had committed the crimes. Claimant objected to his attorney, but did not raise an objection with the court.

The female complainant, Eleanor Divers Mulnix, testified that she recalled testifying at claimant's trial that he

was the man who committed the robbery and rape. She was not really positive about her identification but said it so she could get out of court. She believed she was mistaken in identifying Jerome Tyler. She stated that the man who raped her had a scar on his neck.

Respondent contends that claimant has failed to sustain the burden of proving himself innocent of the facts of the crime by a preponderance of the evidence, pointing out that this is distinguished from the raising of a reasonable doubt; (*John Hudson* vs. *State*, No. 5164 (1967); that the failure to call Howard Burks at the criminal trial negates his testimony before the Court of Claims and destroys his credibility (*Jonnia Dirkans* vs. *State*, No. 4904); that the prior inconsistent statements of Eleanor Divers Mulnix have impeached her; that the fact claimant did not object to perjured statements of Willie Stephens is incredible; that claimant's actions of fabricating a false alibi, testifying under oath thereto, and allowing two other witnesses to testify falsely on his behalf were the direct cause of his imprisonment; that the State should not be held liable for the claimant's perjury and other misdeeds where it acted properly and in a legal manner since the theory underlying the State's liability for wrongful incarceration is that the State acted or did something improperly so as to prejudice the rights of the claimant resulting in his imprisonment for a crime he did not commit; and that claimant's testimony regarding damages is inconsistent and unreliable.

Claimant replies that the test under the Statute is whether claimant is innocent of the fact of the crime for which he was imprisoned and respondent has presented no evidence to refute the case established by claimant; that the evidence is clear that the person who committed the crimes for which claimant was imprisoned had a scar on his neck and that claimant has no such scar; that former Assistant

State's Attorney Sheldon Schapiro and State's Attorney Detective Frank Butler testified that when they embarked on the investigation, it was not their purpose to prove the claimant's innocence which is in no way inconsistent with their conclusion that claimant was innocent of the fact of the crime; that the weight and credibility of the testimony of witnesses Burks and Eleanor Divers Mulnix is a question for the trier of fact; and that claimant was not the master of his own defense in that he was continually incarcerated from the time of arrest until trial and had neither the training nor background to assert every right which a more sophisticated defendant might have invoked. Claimant further contends that he presented evidence of consistent employment dating back four years prior to his arrest, was a skilled specialist in automatic transmissions prior to going to prison, a skill which fell into disuse as a result of his imprisonment.

In the opinion of the Court the claimant has satisfied the sole standard set by the legislative requirements for recovery under Section 8c—proof by a preponderance of evidence that he was innocent of the crime for which he was imprisoned.

Special weight must be given to the testimony of Sheldon Schapiro, the Assistant State's Attorney who conducted the reinvestigation and Officer Frank Butler who assisted him. Both witnesses have testified that from their investigation, it is their opinion that the claimant was innocent of the charges for which he was imprisoned. The respondent has offered no testimony, nor has it argued that claimant did, in fact, commit the crime for which he was imprisoned.

Claimant is hereby awarded the sum of $6,000.