PER CURIAM.

(No. 5643— )

VALENTINE HARPSTREITH, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 8, 1975.*

SPRAGUE, SPRAGUE & YSURSA, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

PERLIN, C. J.

Claimant, Valentine Harpstreith, seeks $35,000 in damages as compensation for 20 years of imprisonment which he asserts were unjustly administered as a result of an erroneous conviction. The claim is invoked pursuant to Section 8(c) of the Court of Claims Act, Ch. 37, Ill. Rev. Stat., Sec. 439.8(c) which grants exclusive jurisdic-

tion to this Court over claims against the State for time unjustly served in prison.

Valentine Harpstreith was convicted of the murder of one Julius Nungesser in the Circuit Court of St. Clair County in 1929, and was imprisoned from April, 1929, to July 2, 1949. On December 30, 1968, he received a pardon from the Honorable Samuel H. Shapiro, the then Governor of the State of Illinois. Inquiry by the Court, has determined that the Board of Pardons advised Harpstreith that the ground for the pardon was his "twenty-years' service on the life sentence before parole eligibility occurred, plus the good record maintained during the nineteen years since [his] release on parole."

The record before this Court establishes that on September 9, 1929, one Julius Nungesser was shot to death on his farm outside of New Baden, Illinois. A man named Albert Kehrer, who was picking elderberries in the vicinity, heard the shots, drove to the farm and saw the victim lying on his back. He called to Nungesser but received no response so he proceeded to the farm of Frank Grimmer, a neighbor, and returned to the scene with Grimmer. Grimmer states that when he arrived at Nungesser's farm, he asked the victim what had occurred, ". . . and he told me that a detective came out of the cornfield and shot him." Grimmer then procured a glass of water for Nungesser, at the latter's request, held his head, and gave him a drink. The victim then lapsed into unconsciousness and died. Grimmer has stated that at Harpstreith's trial he was not allowed to testify concerning the aforesaid remark by Nungesser.

At the time of the murder, claimant operated an establishment in the area, colloquially known as a speak-easy. Several days after Nungesser's murder, he was arrested on suspicion of possession of bootleg whis-

key and was taken to the Clinton County Jail. Harpstreith was interrogated concerning the shooting, but denied having any knowledge of the incident. Subsequently, he was convicted on the bootlegging charge and fined $850. However, according to Harpstreith, the fine was reduced to $300 after a hushed conference between the judge and the Clinton County sheriff. On the way back to the jail the sheriff allegedly asked claimant for information on the Nungesser matter in return for the reduced fine. Again, claimant maintained his ignorance of the crime.

Harpstreith testified that during his stay in the Clinton County Jail he was repeatedly interrogated about the murder and subjected to physical and mental abuse in order to coerce a confession. No confession was forthcoming and after four days he was transferred to the St. Clair Jail, where he was confined in a "three foot square box with three holes for ventilation," for over 90 hours. A written confession was repeatedly placed in front of him for his signature, but he continued to resist these and other pressures.

Finally, claimant was tried for the Nungesser murder with two co-defendants, Raymond Rensing and Elmer Lindner. Both Rensing and Lindner had signed confessions implicating Harpstreith, but at trial both Rensing and Lindner attempted to rescind these confessions as being the result of physical coercion. Both now state that these confessions were coerced and untrue.

The only other testimony at trial adverse to the claimant was that of George Shelton and Charles Pillows, two of claimant's fellow inmates, who stated that they heard Harpstreith admit to the murder while in jail. Shortly after the trial, both of these men escaped from jail. When recaptured, both signed sworn affidavits

stating their testimony about Harpstreith had been false and was induced by promises of freedom from the authorities.

Claimant has also brought to the attention of this Court the fact that the prosecuting attorney has expressed his doubts about Harpstreith's guilt, and has stated that those doubts have existed since the time of the trial.

During the present proceedings, William Nettles, the former sheriff of Clinton County, testified for respondent that when claimant approached him seeking help in obtaining a pardon, Nettles went to speak to Raymond Rensing. Nettles said that Rensing told him not to bother to help because he [Rensing] had been at the farm with Harpstreith on the day of the murder, and Harpstreith had come from behind the farmhouse with a gun in his hand after shots had been fired.

Rensing denied making this statement to Nettles, saying that he told Nettles not to get involved because he [Rensing] was tired of having the matter repeatedly brought up.

As originally enacted, Section 8(c) of the Court of Claims Act, required a claimant seeking damages for unjust imprisonment to prove his innocence of the crime for which he was imprisoned. The section provided:

"(c) All claims against the State for time unjustly served in prisons of this State where the persons imprisoned proved their innocence of the crime for which they were imprisoned . . ."

This provision gave rise to many problems. Often the Court was called upon to re-try criminal cases long dormant, after the memories of witnesses had faded, and evidence was no longer available or had changed with the passing of time.

Since the Court could not rationalize any intent by the Legislature to reward perpetrators of crimes who might allege and prove technical errors in their convictions, the Court adopted a rule requiring a claimant to establish by a preponderance of the evidence that he did not commit the act which constituted the crime for which he was convicted. *Dirkins* v. *State of Illinois*, 25 C.C.R. 343 (1965).

Subsequently, in order to obviate the problems inherent in the administration of the statute, the Legislature amended Section 8(c) to require that one who seeks to recover for time unjustly served in prison must first have received a pardon on grounds of innocence. See, Ch. 37, Ill. Rev. Stat., Sec. 439.8(c). However, at the time claimant instituted this action, this amendment was not in effect, and claimant therefore bears the burden of establishing, by a preponderance of the evidence, his innocence of the "fact" of the crime for which he was imprisoned.

All four witnesses who tied Harpstreith to the crime at the original trial appear to have reversed their testimony. His two fellow inmates who said they heard claimant admit to the murder subsequently swore that they did so upon a promise of freedom, and Harpstreith's alleged co-conspirators have also now stated that they lied under coercion when they implicated him in the matter. They manifest no apparent ulterior motive for these recantations.

It thus may well be that claimant could sustain his burden of proof as generally required in cases of this kind. However, before reaching this issue we must consider as a question of first impression the retroactive application of Section 8(c) of the Court of Claims Act, Ch. 37, Sec. 439.8(c), which was enacted July 9, 1959, thirty

years subsequent to claimant's conviction and ten years after his release from the penitentiary.

A "retroactive law" has been defined as one which "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." 82 C.J.S. *Statutes*, Sec. 412. There is no doubt that Ch. 37, Ill. Rev. Stat., Sec. 439.8(c) created a new obligation on the part of the State to compensate individuals wrongfully convicted and incarcerated, as no such duty existed at common law. See, *Campbell* v. *State*, 62 N.Y.S.2d (1946).

Section 439.8(c) is silent as to whether it is to be applied retroactively. By contrast, Art. 2, Sec. 9(3-a) of the Court of Claims Act of New York grants that court jurisdiction,

"To hear and determine the claim for damages against the State of any person *heretofore or hereafter* convicted of any felony or misdemeanor against the State and sentenced to imprisonment, who, after having served all or any part of his sentence, shall receive a pardon which is issued on the ground of innocence of the crime for which he was sentenced." (emphasis supplied)

The Illinois statute contains no comparable language, and under general rules of statutory construction, such words are necessary if a statute is to be given retroactive application. In *U.S. Steel Credit Union* v. *Knight*, 32 Ill.2d 138, 204 N.E.2d 4 (1965), the court said:

"Retroactive legislation is not favored and as a general rule statutes are considered to operate prospectively unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication."

See also, *Quincy Trading Post* v. *Department of Revenue*, 12 Ill.App.3d 725, 298 N.E.2d 789 (1973); *People ex rel Eitel* v. *Lindheimer*, 371 Ill. 367, 21 N.E.2d 318 (1939); and 34 I.L.P. *Statutes*, §193.

We can find no clear direction from the Legislature in

Section 8(c) of the Court of Claims Act that the statute is to be applied retroactively, and in the absence of such express direction we are compelled to give the statute only prospective application.

One additional aspect of this issue merits attention, although it has not been raised by either party. Section 22 of the Court of Claims Act, 37 Ill. Rev. Stat., Sec. 439.22, provides in pertinent part:

"Every claim *cognizable by the court* arising under subsection C of Section 8 of this Act shall be forever barred from prosecution therein unless it is filed with the Clerk of the Court within 2 years after the person asserting such claim is discharged from prison, or is granted a pardon by the Governor,\*\*\*." (emphasis supplied)

Since claimant did file this action within two years of receipt of a gubernatorial pardon, it may be contended that Section 22 authorized his cause of action.

The answer to any such contention is found, we believe, in the language of Section 22 referring to claims "*cognizable by the court* arising under subsection C of Section 8 of this Act." We have concluded that Section 8(c) of the Act cannot be applied retroactively. Therefore, claimant does not have a "claim cognizable by the court."

The Court must therefore deny claimant's request for damages.