(No. 35235.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JONNIA DIRKANS, Plaintiff in Error.

*Opinion filed January 22, 1960.*

KENNETH S. JACOBS, of Wheaton, for plaintiff in error.`

GRENVILLE BEARDSLEY, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and FRANCIS X. RILEY, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The defendant was convicted of the crime of armed robbery in the criminal court of Cook County in 1958. A bill of exceptions was obtained under rule 65—1 and a writ of error has been issued from this court to review the judgment of conviction. Defendant contends that the evidence was insufficient to establish his guilt beyond a reasonable doubt and also that he was deprived of the right to process to compel the attendance of witnesses.

The case was called for trial on May 13, 1958, before the court without a jury. Defendant's counsel stated to the court that defendant had two witnesses who were not present but that he was willing to permit the State to put in their case and he would bring in the defendant's witnesses later. The State then proceeded with their case on that date. The principal witness for the State was Beryl Shorter who testified as follows: At about four o'clock on the morning of February 1, 1958, she was parked in her car waiting for a friend who was in a tavern across the street. She noticed a man approach her car and stand there for about three or four minutes but she didn't pay

very much attention to him at that time. She identified defendant as the man she had seen. She leaned over to lock the car door on the passenger's side and defendant jerked open the door on the driver's side and grabbed her from behind and placed a sharp instrument on her neck. Defendant made her get out of the car and walk about half a block down the street and turn into an alley where he forced her to lean up against a wall with her face to the wall. Defendant searched her and took $65 from her pockets and removed her slacks and told her to unbutton her underwear. She pleaded with him and told him that she had been ill and defendant told her that he would leave her alone. Defendant warned her not to look at him and told her to stay in the alley for five minutes. She heard defendant run out of the alley and she waited there for about five minutes and then went to a police station and reported the robbery and gave the police a description of her assailant. On March 3, at about two o'clock in the morning she and a friend of hers were parked across the street from a restaurant when she noticed defendant go into the restaurant. She thought that he looked like the man who had robbed her, so she and her friend went across the street into the restaurant to get a better look at him. She and her friend sat down and had something to drink and she continued to look at defendant until she was sure he was the man who had robbed her. She then left the restaurant to notify the police, but her friend and defendant remained in the restaurant. Soon thereafter she returned with a police officer who arrested defendant. When she was questioned on cross-examination about her identification of the defendant in the restaurant on March 3, she said that when she first saw defendant on the street she was not quite sure whether he was the man who had robbed her but that after she had been in the restaurant for a little while and had observed him she was sure. This was the only evidence for the State.

At the conclusion of the State's evidence defendant's counsel stated that he was not ready to proceed because he had two witnesses who were not there. The case was then continued until May 22, and on that date was again continued to June 16. On that date counsel for the defendant stated that he did not know whether he had any witnesses but that he was ready to dispose of the case. The defendant was present and did not object to proceeding without any witnesses. Defendant then testified in his own behalf that on the day before the robbery he had gone to work at four o'clock in the afternoon and got off work at one o'clock in the morning. Before leaving his place of employment he was paid for a week's work. Defendant testified that after he left work he met his girl friend and a man by the name of Judge Proyer. He stayed with them for a while and then drove to his home arriving there around 2:30 in the morning. He denied committing the robbery and testified that he never saw Beryl Shorter before the time he was arrested in the restaurant on March 3. There was no other testimony for the defense.

During the course of the closing argument by defendant's counsel, counsel stated to the court that there was nothing to corroborate Beryl Shorter's testimony. The trial judge then said: "She saw him at one time in between the hold-up and the arrest, didn't she?" Defendant's counsel stated that he did not recall whether she said that or not. The court then said: "She had seen him and he got away. I think there is something in the testimony to that effect so you have got an identification by her on two occasions after the hold-up." A few moments later the court said: "She claims that she saw him again at some other time. I forget just the details of it, and then she saw him the second time when she had her car there and she saw him standing and he went in the restaurant and she and her companion went in there and then she went outside and got the police. So in her identification, it is positive."

Somewhat later the following conversation took place between the court, the assistant State's Attorney, and the defendant:

"The Court: There was no evidence of seeing him in between the time of this hold-up and the arrest? Are you sure about that?

Mr. Lund: I thought there was Judge.

The Court: It was my recollection. I am not very clear as to just what she said.

Defendant: No sir. There was no further identification at all. I never saw the lady but once in my life.

The Court: Well, I can't help it. I have got to choose between your testimony and hers.

Defendant: Will you give me an opportunity to take a lie-detector test to see about this case.

The Court: No. I am not taking lie-detector tests.

Defendant: Well, Judge, Your Honor, there is no testimony in here that she said she had seen me at any time, at no time, prior to the time when she walked in the restaurant.

The Court: Well, it wouldn't be controlling whether there was or wasn't."

The court then entered a finding of guilty and continued the matter to June 30, for sentencing. At that time the defendant again protested that he was innocent and stated to the court, "That lady saw me only one time when she came in that restaurant." The court then said, "The court had all that before it. I heard the testimony and heard arguments of counsel and you made a statement of your position also after that. The court does not feel that under the evidence before it in this case and the circumstances of the identification, it can change the finding and for that reason I am denying the motion for a new trial and the motion in arrest of judgment."

In this case the only identification testimony was that of Beryl Shorter. Opposed to this testimony is defendant's

denial. We have held that positive identification by one witness who has ample opportunity for observation may be enough to support a conviction. (*People* v. *Lamphear*, 6 Ill.2d 346.) However, we are of the opinion that there are circumstances present in this case which raise a reasonable doubt as to defendant's guilt. There is nothing in the record to show whether the place where the robbery occurred was brightly lighted or even lighted at all. It does appear, however, that the robbery took place about four o'clock on a February morning when it would be dark in the absence of street lights or car lights. Beryl Shorter testified that when she saw the man approach her car she did not pay very much attention to him. The evidence shows that the robber was behind Beryl Shorter practically all of the time so that she had little opportunity to observe his face. All of these circumstances show that Beryl Shorter did not have a favorable opportunity to observe her assailant. In spite of this fact, we would normally be reluctant to disturb the finding of the trial judge, since the credibility of the witnesses was a matter for him to determine. (*People* v. *West*, 15 Ill.2d 171.) However, in the present case it appears that the trial judge's determination on this question was influenced to a considerable extent by a belief that Beryl Shorter had testified that she had identified defendant on two separate occasions after the robbery. There was, of course, no such testimony, and the trial judge's confusion on this point was doubtless due to the lapse of more than thirty days between hearing the State's case and rendering his finding.

The judgment of the criminal court of Cook County is reversed.

*Judgment reversed.*