(No. 4904-

JONNIA DIRKANS, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed February 25, 1965.*

*Petition of claimant for rehearing denied August 17, 1966.*

JOSEPH A. DONOVAN AND KENNETH S. JACOBS, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; EDWARD A. WARMAN, Assistant Attorney General, for Respondent.

PEZMAN, J.

On March 3, 1958, between 2:00 and 2:30 A.M., claimant, Jonnia Dirkans, was drinking coffee in an establishment located on 47th Street in the City of Chicago, which was known as the "Hub Restaurant." After he had been there for ten or fifteen minutes he was arrested by two police officers of the City of Chicago on the complaint of a woman and her male companion who were in the restaurant. The woman stated that Dirkans was the man who had robbed her approximately one month before at a point near Prairie Avenue and 55th Street in the City of Chicago.

Jonnia Dirkans, claimant in this cause, was indicted for armed robbery by the Cook County Grand Jury. The indictment alleged that on the 4th day of February, 1958, claimant assaulted the complaining witness, Berl Shorter, and, while armed with a dangerous weapon (indicated as being a knife), by force and intimidation robbed her of $65.00.

Claimant pleaded "not guilty" in the Criminal Court of Cook County, and waived a trial by jury. He was defended by an attorney from the Office of the Public Defender of

Cook County in the trial before Hon. Grover C. Niemeyer, a Judge of the Criminal Court of Cook County. The trial took place on two separate dates, i.e., May 13, 1958 and June 16, 1958. Witnesses testifying in the criminal trial were Beryl Shorter, the complaining witness on behalf of the State, and Jonnia Dirkans, defendant in his own behalf. The defense offered was that defendant was not anywhere near the area of the alleged armed robbery at the time and place indicated by Beryl Shorter.

At the very beginning of the criminal trial the attorney from the Public Defender's Office informed the Court, "If the Court please, in this Dirkans' case I have two witnesses who are not here, but I am willing to go ahead and let them put in their case. And, if necessary, I will get my witnesses in later." Again, at the close of the first segment of the criminal trial, Mr. John M. Branion, Assistant Public Defender, informed the Court that he could not proceed further in the defense because he had two witnesses who were not present. One lived downstate, and the other had moved but a few months before. During the second portion of the trial, which was resumed on June 16, 1958, Mr. Branion stated as follows, "I don't know whether I have my witnesses, but I am ready to dispose of it. They are not present. I don't know whether they will be here." The Court asked him whether or not he was ready to proceed, and he stated, "I am ready to put my defendant on." He restated, "I am ready to proceed with the defense." During all of this questioning the defendant, Jonnia Dirkans, was present in open Court.

Following the conclusion of the trial on June 16, 1958, the Court entered a finding of "guilty of armed robbery," and, on July 2, 1958, fixed the sentence at from one to four years in the State Penitentiary. A motion for a new trial on behalf of the defendant was denied, as was his motion in

arrest of judgment. In November of 1959, Jonnia Dirkans brought a Petition for a Writ of Error to the Supreme Court of the State of Illinois, and, due to his financial inability, requested that the Court appoint counsel on his behalf to prosecute the Writ of Error.

In *People of the State of Illinois* vs. *Jonnia Dirkans*, 18 Ill. 2d 300, 164 N.E. 2d 23, the Supreme Court noted in its opinion that the Trial Judge in his decision and opinion in support of the finding of guilty against the defendant misinterpreted and misconstrued the evidence by stating that it was his recollection that the complaining witness had identified the defendant on two occasions, while, in fact, the evidence in the trial showed that she had only identified Jonnia Dirkans after the alleged robbery in the restaurant on March 3, 1958. The Supreme Court reversed the judgment of the Criminal Court of Cook County. It stated that the confusion on the point of identification was doubtlessly due to the lapse of more than thirty days between the hearing of the State's case and judgment.

Following the reversal of his conviction and release from the State Penitentiary, Jonnia Dirkans filed a petition in the Court of Claims under the provisions of Chap. 37, Sec. 439.8C, Ill. Rev. Stats., which confers jurisdiction on the Court of Claims to hear and determine "all claims against the State for time unjustly served in prisons of the State where the persons imprisoned prove their innocence of the crime for which they were imprisoned."

On January 10, 1961, Chief Justice Joseph J. Tolson and Judges Gerald W. Fearer and James B. Wham entered an order for a general continuance in this cause. Prior thereto it had been consolidated with several other cases pending in the same category, namely, *Virgil Baker* vs. *State of Illinois, Henry Napue* vs. *State of Illinois,* and *Roland Munroe, Jr.,* vs. *State of Illinois.* The contents of the order are set forth below:

"1. In 1959 the Court of Claims Act was amended as follows: (Chap. 37, Sec. 439.8, 1959 Ill. Rev. Stats.)

The Court shall have jurisdiction to hear and determine the following matters:

(a) — — — — — — — —

(b) — — — — — — — —

(c) All claims against the State for time unjustly served in prisons of this State where the persons imprisoned prove their innocence of the crime for which they were imprisoned; provided, the Court shall make no award in excess of the following amounts:

For imprisonment of five years or less, not more than $15,-000.00; for imprisonment of 14 years or less but over 5 years, not more than $30,000.00; for imprisonment of over 14 years, not more than $35,000.00, and provided further the Court shall fix attorneys' fees not to exceed 25% of the award granted.

"2. The above cases have been filed, and present diverse factual situations concerning 'proof of innocence,' and this Court is unable to determine the legislative intent insofar as 'the persons imprisoned prove their innocence of the crime for which they were imprisoned.'

"3. The Court, therefore, finds that it is unable to hear and determine such cases without further clarification of the statute by an act of the Legislature.

"IT IS, THEREFORE, ORDERED that all of the above cases be continued generally, without prejudice to either claimants or respondent, pending further action by the Legislature."

This Court at the time the above order was entered felt that the Legislature would take some action to clarify the terminology "proof of innocence." However, since no further clarification was made by the 1961 Legislature, on January 9, 1962, this Court, on its own motion, rescinded the order consolidating the several cases with that of Jonnia Dirkans, as well as its order of January 10, 1961 continuing the cases generally, and further directed that they be placed on the trial calendar for assignment to the Commissioners of the Court of Claims for hearing.

Hearings were held on August 27, September 5, October 19, and December 6, 1962, respectively, in this matter, during which claimant, Jonnia Dirkans, brought forth by subpoena the testimony of Jean Gilliand who was alleged

to have been one of the missing witnesses in the original criminal trial. She testified that claimant had spent from approximately 2:00 until 8:00 A.M. on February 4, 1958 with her and her small child in his room.

Claimant argues that he was deprived of more than two years of freedom by his incarceration in the State Penitentiary, as a result of mistaken identity by the complaining witness. He prays for recovery of an award of $15,000.00, as prescribed by the statutory provision, and, in addition thereto, an amount not to exceed 25 percent of the award granted as fees for his attorneys.

Respondent introduced the testimony of three police officers and one Deputy Clerk in the office at the City Hall. This testimony was in relation to the question of whether or not a lounge, which was located on the first floor of the building in which claimant had a room, was legally open for business between the hours of 2:00 and 4:00 A.M. on February 4, 1958, at which time it was alleged that the said Jean Gilliand went to the lounge to make certain purchases. Respondent contends that claimant, in addition to his conviction of the crime resulting in the presentation of the claim at hand, had been guilty of larceny in the State of Michigan, and had served three to four years for said conviction. It further contends that claimant substantiated his own testimony with the discredited testimony of a female witness who testified that on February 4, 1958, the date on which the alleged criminal act occurred, she had engaged in illicit relations with claimant during the entire night, as she had done on many other occasions.

Irregardless, the most important question involved in the cause at hand is whether or not claimant, Jonnia Dirkans, did "prove his innocence" of the crime. It is believed that this is one of the first cases to be filed under the provisions of Chap. 37, Sec. 439.8C, Ill. Rev. Stats. A check of the

authorities and precedents available indicates that there is no case in Illinois in which the statute involved, or the language "prove their innocence of the crime," have been construed. The Illinois reports are devoid of authority on this point.

Reaching beyond the borders of our State, we find three cases in which the language and facts are of a similar nature. In *Bertram M. Campbell* vs. *State of New York*, 62 N.Y.S. 2d 638, defendant sought to recover from the State of New York for false imprisonment from May 17, 1938 to August 22, 1941. It appears that subsequently another man confessed to the crime of which defendant was convicted, and, on August 28, 1945, Thomas E. Dewey, the then Governor, pardoned defendant. The State of New York passed an enabling statute allowing him to sue and recover by presenting his claim to the Court of Claims of the State of New York.

In another case, *People* vs. *Hoffner*, 129 N.Y.S. 2d 833, defendant was convicted of murder in the first degree, and moved to set aside the judgment on the ground that he had been deprived of due process, inasmuch as a record of the proceedings of the lineup had been made, but thereafter was not made available to his defense counsel. In that matter the Court held that defendant was deprived of due process of law, and the judgment of conviction was vacated. Subsequently, Hoffner brought his action against the State in the New York Court of Claims for damages arising out of the wrongful conviction and imprisonment. That body held that, where defendant was erroneously convicted, the decision of the Court reversing the conviction is determinative where claims are made for wrongful conviction. The reversal apparently was a sufficient basis on which the Court of Claims could make an award. However, there was again an enabling statute granting claimant permission to bring

his action in the Court of Claims of the State of New York.

There. is language of further interest to this Court in the case of *Cratty* vs. *United States*, 83 Fed. Sup. 897, which was brought before the United States District Court, Southern District of Ohio. This was a proceeding to secure a Certificate of Innocence, as provided for in 28 U.S.C.A., Secs. 1495 and 2513. In that situation claimant sought a Certificate of Innocence, which authorizes indemnification of innocent persons convicted of a crime. Respondent contended that claimant was not an innocent victim of a miscarriage of justice, and that a jury had found him guilty upon sufficient evidence. It was pointed out by respondent that it did not appear from the allegations of the Petition of Claimant, Judgment of Reversal of the Circuit Court of Appeals, or the Order of the District Court thereon that claimant did not commit any of the acts with which he was charged, or that claimant's conduct in connection with such charges did not constitute a crime or offense against the United States. The government further contended that claimant was not one whom the statute was intended to benefit. Claimant Cratty was convicted of a violation of the Mail Fraud Statute, but was acquitted on the conspiracy charge. The conviction for Mail Fraud was later set aside in the Circuit Court of Appeals as having been barred by the Statute of Limitations. The Court denied the right of Cratty to recover under the statute authorizing indemnification of innocent persons who have been unjustly imprisoned. The Court ruled it was satisfied that the facts and circumstances presented therein did not make out such a case as Congress meant to include within the humane provisions of the statute there under consideration.

In the first place, the New York Statute, Sec. 9-3A of the Court of Claims Act, is quite different from that of Illinois. It is as follows:

"3A. To hear and determine the claim for damages against the State of any person heretofore or hereafter convicted of any felony or misdemeanor against the State and sentenced to imprisonment, who, after having served all or any part of his sentence, shall receive a pardon from the Governor, stating that such pardon is issued on the grounds of innocence of the crime for which he was sentenced."

This statute relieves the Court of Claims of the State of New York of a considerable burden. Nevertheless, few, if any, claims have been filed under the New York Statute, and the cases cited above from that State were filed pursuant to enabling acts passed by the Legislature.

The law in Illinois is clear that claimant must prove his innocence in order to be entitled to an award by the Court of Claims. The burden is upon claimant to prove by a preponderance of the evidence (1) that the time served in prison was unjust; (2) that the act for which he was wrongfully imprisoned was not committed by him; and, (3) the amount of damages to which he is entitled. (*Jack Flint* vs. *State of Illinois,* 21 C.C.R. 80; *George A. Pitts* vs. *State of Illinois,* 22 C.C.R. 258.)

Claimant seeks to prove his innocence by the testimony of Jean Gilliand, a witness he was unable or unwilling to produce at the original criminal trial. That case was called for trial on May 13, 1958 before the Court without a jury. At the time claimant's counsel stated that defendant had two witnesses who were not present, but that he was willing to permit the State to put its case on, if he could bring in defendant's witnesses later. The State then proceeded with its case on that date, and the cause was continued until May 22, 1958. On that date it was again continued until June 16, 1958, at which time counsel for defendant stated that he did not know whether he had any witnesses, but that he was ready to dispose of the case. It appears that defendant was definitely present in open Court, and did not raise his voice or object to proceeding without the witnesses.

As claimant in this cause of action, the same defendant seeks to convince this Court that he be permitted to retry the original charge against him by introducing the testimony of the witness, Jean Gilliand, and thereby establish his right to recover the sum of $15,000.00 from respondent.

The testimony of the said witness, Jean Gilliand, appears on page 97 of the original transcript of evidence in this cause of action, and portions of it are quoted below:

"Q. Did you ever receive after you left for Harrisburg any communication from Mr. Dirkans?
A. Well, I wrote him a letter, and—well, that was a week after I was down there, and he answered, and then I never heard any more after that.
Q. You did write him a letter?
A. Yes.
Q. About how long after you got to Harrisburg?
A. It was about a week, I'd say.
Q. Did you receive an answer to that?
A. Yes, he answered it.
Q. Within how long a period of time?
A. I'd say about three or four days."

From this testimony it is clear that Jonnia Dirkans, at a time some two or three weeks before his arrest, knew exactly where to communicate with the witness whom he was unable or unwilling to produce at the original criminal trial.

We find that claimant, Jonnia Dirkans, has substantially failed to prove his innocence of the crime for which he was imprisoned. It is the studied opinion of this Court that the Legislature of the State of Illinois in the language of Chap. 37, Sec. 439.8C, Ill. Rev. Stats., intended that a claimant must prove his innocence of the *"fact"* of the crime. It was not, we believe, the intention of the General Assembly to open the Treasury of the State of Illinois to inmates of its penal institutions by the establishment of their technical or legal innocence of the crimes for which they were imprisoned. It is our opinion the legislators intended to provide

a manner of recourse in the Court of Claims, with a specific amount of recovery provided, for a claimant who is able to establish his complete innocence of the *"fact"* of the crime for which he was imprisoned. The lawmakers of this State would not have intended to grant that recourse to the narcotic addicts, murderers, kidnappers, rapists, and other felons who obtain a reversal of their convictions upon a legal or technical basis, such as insanity at the time of commission of the crime, or the running of the Statute of Limitations against said crime. We believe it was the intention of the Legislature in creating Sec. 439.8C of the Court of Claims Act to provide a method of indemnification of persons innocent of the *"fact"* of the crime who have been unjustly imprisoned.

Claim is denied.