(No. 6272)

ELDER MACK, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed September 24, 1984.*

WISEMAN, SHAIKEWITZ, McGIVERN & WAHL, P.C. (S.
RUSSELL MEYER and ANDREW J. MIOFSKY, of counsel), for
Claimant.

NEIL F. HARTIGAN, Attorney General (WILLIAM E.
WEBBER, Assistant Attorney General, of counsel), for
Respondent.

1

Roe, C.J.

Claimant brought this action pursuant to section 8(c) of the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.8(c)), hereinafter referred to as the Act, seeking compensation for time allegedly unjustly served in a State prison. On or about August 1, 1968, he was arrested and charged with murder. He was tried for the offense in Madison County, Illinois, and was convicted and incarcerated in the Madison County jail on December 3, 1968. Thereafter he was transferred to Menard Penitentiary where he remained until approximately February

26, 1970, at which time his conviction was reversed on appeal to the First District Appellate Court of Illinois. Following the reversal he was removed to the Madison County jail where he remained incarcerated until July 31, 1970, at which point he was released on a recognizance bond. He was tried a second time, but the trial ended in a hung jury. On March 3, 1971, a third trial resulted in his acquittal.

The complaint in this case was filed August 31, 1971. At the time it was filed, the Court of Claims Act (Ill. Rev. Stat., ch. 37, par. 439.1 *et seq.*) provided that the Court shall have exclusive jurisdiction to hear and determine:

"All claims against the State for time unjustly served in prisons of the State where the persons imprisoned prove their innocence of the crime for which they were imprisoned . . . ."

Effective October 1, 1972, the Act was amended so as to read that the Court of Claims shall have exclusive jurisdiction to hear and determine:

"All claims against the State for time unjustly served in prisons of this State where the persons imprisoned shall receive a pardon from the Governor stating that such pardon is issued on the ground of innocence of the crime for which they were imprisoned . . . ."

Following the change in the statute, the Court, by then Chief Justice Perlin, on its own motion, caused an order to be entered in this claim which took note of the statutory amendment and put it on general continuance status in order to allow the Claimant time to obtain, or attempt to obtain, a pardon from the Governor on the grounds of innocence, and stated that such a pardon was not a condition precedent to compensation for time unjustly served in prison. Claimant followed the Court's directive and applied for and received a pardon on the grounds of innocence from then Governor Daniel Walker on December 20, 1974.

Although Chief Justice Perlin's order would seem to have disposed of the question, the threshhold issue raised in this case is under which of the two versions of the statute should this case be decided.

Basically, it is the Claimant's position that the change in the statute was procedural in nature and therefore retroactive, that he acted in good faith in following the Court's order by securing a pardon on the grounds of innocence, that to hold otherwise would in effect be penalizing him for complying with the Court order, and that by virtue of the pardon on the grounds of innocence the only issue remaining is the amount of damages to which he is entitled.

Respondent takes the position that the change in the statute was substantive in nature and therefore operates prospectively only. It would have us examine the record and determine if the Claimant proved his innocence of the crime by the preponderance of the evidence. Even if we find that the case should be decided under the amended version of the statute, Respondent would seem to contend that the pardon should not be considered in this proceeding based on an argument that it was a nullity because of certain constitutional infirmities.

Counsel for both sides cited cases seemingly directly on point which support their respective positions in their briefs and sought to distinguish each other's cases in the course of oral argument. While we appreciate counsel's efforts, we have reviewed every case decided in this Court on the issue of unjust imprisonment and must conclude that the decisions are irreconcilable.

This Court has struggled with the statute since the day it became effective in its original version. The first

case decided was *Dirkans v. State* (1965), 25 Ill. Ct. Cl. 343, *rehearing denied* (1966). It took over six years to be finally resolved. It points out the problems the Court had when the statute was first enacted and set forth the rule upon which all the unjust imprisonment cases were decided up until the statutory change. We also feel that it is relevant to this case from a historical perspective on the issue of legislative intent.

During the *Dirkans* litigation the Court unanimously issued an order for a general continuance, prior to which it had been consolidated with several other pending cases of the same type. In that order, after first reciting the statute, the Court stated:

"2. The above cases have been filed, and present diverse factual situations concerning 'proof of innocence,' and this Court is unable to determine the legislative intent insofar as 'the persons imprisoned prove their innocence of the crime for which they were imprisoned.'

3. The Court, therefore, finds that it is unable to hear and determine such cases without further clarification of the statute by an act of the Legislature.

It is, therefore, ordered that all of the above cases be continued generally, without prejudice to either claimants or respondent, pending further action by the Legislature." (*Dirkans, supra,* at 347.)

The Court's obvious purpose was to obtain legislative clarification of the statute by amendment. A change in the law enacted at this point clearly would have been applied retroactively. However, after a year of inaction by the legislature, the Court released these hostage claims from general continuance and assigned them to commissioners to hold hearings apparently without any guidelines as to what the elements of the cause of action were.

However, in deciding *Dirkans*, the Court in effect made its specific recommendations for statutory change known. It pointed to the New York statute on unjust imprisonment which bears a striking resemblance to our

present version of the Act, and commented that New York's statute relieved the Court of a considerable burden. (*Dirkans, supra,* at 351.) The Court went on to state:

"It is the studied opinion of this Court that the Legislature of the State of Illinois in the language of . . . (the earlier version of our Act) . . . intended that a claimant prove his innocence of the *'fact'* of the crime. It was not, we believe, the intention of the General Assembly to open the Treasury of the State of Illinois to inmates of its penal institutions by the establishment of their technical or legal innocence of the crimes for which they were imprisoned. . . . The lawmakers of this State would not have intended to grant that recourse to narcotic addicts, murderers, kidnappers, rapists, and other felons who obtain a reversal of their convictions upon a legal or technical basis, such as insanity at the time of commission of the crime, or the running of the Statute of Limitations against said crime. We believe it was the intention of the Legislature in creating Sec. 439.8C of the Court of Claims Act to provide a method of indemnification of persons innocent of the *'fact'* of the crime who have been unjustly imprisoned." (Emphasis by Court.) *Dirkans, supra,* at 352-53.

Those observations were made after the Court issued the following rule which would be applied in all of the then-pending and future cases up to the time of the change in the law:

"The burden is upon the Claimant to prove by a preponderance of the evidence (1) that the time served in prison is unjust; (2) that the act for which he was wrongfully imprisoned was not committed by him; and, (3) the amount of damages to which he is entitled." (Citing cases which dealt with the burden of proof in tort claims.) (*Dirkans, supra,* at 351.)

After reviewing the record, the Court in *Dirkans* found that the Claimant had failed to sustain his burden of proof.

A reading of the opinions in the cases decided during the period after *Dirkans* up to the time of the change in the law (and in certain cases even after the law was changed) illustrates the difficulties encountered by the Court, the Respondent, and the Claimants. The effect of the *Dirkans* rule was that a hearing on an unjust imprisonment case amounted to a trial *de novo* on the criminal charge, with the burden of proof being on the

Claimant to prove that he did not do the act for which he was charged with having committed a crime. The Court would not retry the evidence in the original criminal trial. (*Strong v. State* (1965), 25 Ill. Ct. Cl. 231, 234.) No presumption of innocence existed in favor of the claimant, as the Court explained in *Bender v. State* (1967), 26 Ill. Ct. Cl. 383, *rehearing denied* (1968):

"Claimant's petition for rehearing alleges that the Court has failed to consider the presumption of innocence that has never been overcome in Claimant's case, as there is no lgeal conviction (Claimant had been twice convicted and secured reversals by the supreme court in both instances), and that by dismissing charges the State has conceded to the innocence rather than guilt of Claimant. This Court finds that Claimant has confused two separate forums and two separate theories of law. The original forum wherein the Claimant was tried for an alleged crime, and wherein the Claimant must have been proven guilty beyond a reasonable doubt, and the Court of Claims wherein the Claimant seeks to recover against the State under Sec. 8C of the Court of Claims Act (*sic*). There is no legal relationship between the findings of the supreme court as to whether or not the civil rights of Claimant were violated, and the finding of the Court of Claims wherein Claimant seeks recourse under a statutory provision in a semi-judicial forum, which was created by the legislature for the purpose of hearing causes of action against the State of Illinois that are constitutionally prohibited in normal courts of law. In this latter forum, rules of evidence and procedure and elements of proof are of a special nature often dissimilar to those rules prescribed in a court of criminal jurisdiction." *Bender, supra*, at 388.

Numerous problems involving availability and credibility of witnesses were encountered by both sides, but especially by the Respondent. (*Beard v. State* (1972), 27 Ill. Ct. Cl. 390.) Witnesses previously unavailable to testify at the criminal trial appeared at Court of Claims hearings. (*Dirkans, supra; Beard, supra; Nunes v. State* (1970), 27 Ill. Ct. Cl. 250.) Due to the length of time between the criminal trial and the Court of Claims hearing (30 years in *Conroy v. State* (1969), 26 Ill. Ct. Cl. 303), exculpatory and accusatory witnesses had disappeared. See *Napue v. State* (1962), 26 Ill. Ct. Cl. 192, where, after having served 20 years in a penitentiary, Claimant's conviction was reversed by the United States

8

Supreme Court and he was unable to locate his wife who was described as "the one person who presumably could have testified as to Claimant's whereabouts at the time of the robbery . . . ." *Napue, supra,* at 196.

In many instances the only real evidence of the Claimant's innocence was his own uncorroborated testimony. This led to the Court's holding that the legislature did not intend for such to be a sufficient basis for compensation. (*Dirkans, supra; Bender, supra; Martin v. State* (1968), 26 Ill. Ct. Cl. 371; *Qualls v. State* (1968), 26 Ill. Ct. Cl. 208; *Conroy v. State, supra; Shook v. State* (1969), 27 Ill. Ct. Cl. 29.

In addition to creating the factual problems, application of the Act and the *Dirkans* rule apparently did not enable the Court to achieve consistent decisions on matters of law and perceived legislative intent. In *Munroe v. State* (1966), 25 Ill. Ct. Cl. 286, the Claimant had been acquitted after his second trial on the grounds that he was insane at the time he committed the act. The Court applied *Dirkans* and denied his claim because he was not innocent of the "fact" of the crime, *i.e.* he did the act for which he was charged with having committed a crime. Because of his insanity, however, his commission of that act did not constitute a crime. In *Beard v. State, supra,* the Claimant had been convicted of murder but the case was remanded by the appellate court for a new trial which took place five years later and which resulted in an order of discharge. At his hearing before the Court of Claims, the Respondent made the argument that even if he was not guilty of murder, he was still guilty of a lesser included offense. Without reviewing the facts the Court held that the statute specifically referred to the "crime for which he was imprisoned." This leads to the conclusion that a

Claimant may do an act and such act may constitute a crime, but if it was not the crime for which he was imprisoned, then he could receive compensation. The Claimant in *Beard* did receive an award. In *Smith v. State*, (1969), 26 Ill. Ct. Cl. 290, the Claimant was released from prison where he was incarcerated for a parole violation on a writ of *habeas corpus*. The writ had been granted because, due to a technicality, he was not legally considered to have been on parole at the time he committed the Act. In granting an award the Court stated that, "While Claimant Smith's imprisonment for parole violation was not technically an imprisonment for a 'crime,' as stated in the Court of Claims Act, it must be assumed that the word 'crime' as used in the statute encompasses any offense for which a person is illegally imprisoned." (*Smith, supra,* at 298.) Smith committed the act for which he had been charged with a crime, but, it was not a crime. In *Peterson v. State* (1973), 29 Ill. Ct. Cl. 398, *rehearing denied* (1974), the Claimant had been charged with murder by abortion, pleaded not guilty, and then pleaded guilty to involuntary manslaughter. He was released on a writ of *habeas corpus* after the circuit court determined that there was no such crime as murder by abortion (because the Criminal Code of 1961 had abolished it), that involuntary manslaughter therefore could not be a lesser included offense, and that, therefore, no crime had been committed. Peterson's claim was denied by an opinion written by the same judge who wrote the *Smith* opinion. In both cases, the Claimants committed the act for which they were charged with having committed a crime. In neither case did the act committed constitute a crime. Different conclusions were reached. The bases of the decisions in each of these four cases was the *Dirkans* rule that a determination be made of guilt or innocence of the

"fact" of the crime. It is possible to draw distinctions among these four cases, but they serve to illustrate the problems faced by the Court with the language of the Act and the Court's best efforts in interpreting it.

On October 1, 1972, the Act was finally amended by deleting the requirement that Claimants must prove their innocence of the crime for which they were imprisoned and substituting the requirement that a pardon on the grounds of innocence be received from the governor. A review of the cases following the change also shows very uneven and inconsistent application.

Eighteen days after the new law went into effect, the Court rendered the opinion in *Tyler v. State* (1972), 28 Ill. Ct. Cl. 90. The earlier version of the Act was applied without any discussion of the change in the Act. Three weeks later the opinion on rehearing in *Duncan, supra,* was issued affirming the Court's application of the earlier version without discussion of the change in the Act.

Then on August 20, 1973, two consolidated cases which were filed after the change in the law, *McCray v. State* (1976), 31 Ill. Ct. Cl. 423, and *Dillard v. State* (1976), 31 Ill. Ct. Cl. 424, were placed on general continuance by order of the Court to allow for time to obtain a pardon. The Court held that the change in the law was both retroactive and jurisdictional. Approximately two weeks later the case at bar, which was filed prior to the change in the law, was put on general continuance for the same reason. Counsel for the Respondent explained at oral argument that the same order of general continuance which was entered in the case at bar was entered in all pending cases of this type at the time. The language of the order would seem to so indicate:

"Inasmuch as the General Assembly of Illinois has changed the law under which this action was brought, an amendment which the court has found to be strictly procedural in nature and therefore retroactive in its effect, this claim and all other similar cases will be continued to allow the claimant adequate time to comply with the procedure now required by law.

Since there are numerous cases of this type now pending, and since the court's position on the legal questions involved has been extensively explained in a recent order, a copy of our comments and conclusions in . . . (*McCray* and *Dillard*) . . . is attached hereto and made a part of this order for informational purposes."

An examination of the docket indicates that at this time there were 13 such claims pending, including *Dillard*, *McCray*, and the case at bar. Orders of general continuance to allow time to obtain a pardon were docketed in only five of those cases. In only one instance does the record reflect that a pardon had previously been obtained, *Harpstreith v. State* (1975), 30 Ill. Ct. Cl. 546, and it was not issued on the grounds of innocence.

The next opinion rendered was *Washington v. State* (1974), 29 Ill. Ct. Cl. 371. This claim had been filed before the statutory change, was pending at the time of the *McCray* and *Dillard* order, and was not put on general continuance. The Claimant was granted an award based on the earlier version of the Act and the *Dirkans* rule without any discussion of the change in the law or any mention of a pardon. Approximately one month later, the Court rendered the decision on rehearing in *Peterson, supra*, affirming, without discussion of the change in the Act, a decision applying the earlier version of the Act entered just eight days before *McCray* and *Dillard* were put on general continuance.

It was not until a year later that another decision on the unjust imprisonment issue was rendered. Valentine Harpstreith had been imprisoned from April of 1929 to July of 1949, a period of 20 years. He received a pardon

in December of 1968 based upon " 'twenty years' of service on the life sentence before parole eligibility occurred, plus the good record maintained during the nineteen years since (his) release on parole". (*Harp-streith v. State* (1975), 30 Ill. Ct. Cl. 546, 547.) He filed his claim May 15, 1969.

On May 8, 1975, the Court rendered its opinion on the matter. Calling it a case of first impression, the Court held that the Act, *as it was originally drafted,* did not operate retroactively, so as to create a cause of action based on alleged unjust imprisonment taking place prior to the Act's becoming effective on July 9, 1959. The rationale was as follows:

"A 'retroactive law' has been defined as one which 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already passed.' 82 C.J.S. *Statutes,* Sec. 412. There is no doubt that (the earlier version of the Act) . . . created a new obligation on the part of the State to compensate individuals wrongfully convicted and incarcerated, as no such duty existed at common law. See *Campbell v. State,* 62 N.Y.S.2d (1946).

Section 439.8(c) is silent as to whether it is to be applied retroactively. By contrast, Art. 2, Sec. 9(3a) of the Court of Claims Act of New York grants that Court jurisdiction,

'To hear and determine the claim for damages against the State of any person *heretofore or hereafter* convicted of any felony or misdemeanor against the State and sentenced to imprisonment, who, after having served all or any part of his sentence, shall receive a pardon which is issued on the ground of innocence of the crime for which he was sentenced.' (Emphasis added.)

The Illinois statute contains no comparable language, and under general rules of statutory construction, such words are necessary if a statute is to be given retroactive application . . . .

We can find no clear direction from the Legislature in (the earlier version of the Act) . . . that the statute is to be applied retroactively, and in the absence of such express direction we are compelled to give the statute only prospective application.

One additional aspect of this issue merits attention, although it has not been raised by either party. Section 22 of the Court of Claims Act, 37 Ill.Rev.Stat., Sec. 439.8, provides in pertinent part:

'Every claim *cognizable by the court* arising under subsection C of Section 8 of this Act shall be forever barred from prosecution therein unless it is filed within 2 years after the person asserting such claim is discharged from prison, or is granted a pardon by the Governor, ***.' (Emphasis added.)

Since Claimant did file this action within two years of receipt of a gubernatorial pardon, it may be contended that Section 22 authorized his cause of action.

The answer to any such contention is found, we believe, in the language of Section 22 referring to claims '*cognizable by the court* arising under subsection C of Section 8 of this Act.' We have concluded that Section 8(c) of the Act cannot be applied retroactively. Therefore, Claimant does not have a 'claim cognizable by the court'." *Harpstreith, supra*, at 551-52.

From that reasoning it is clear that under the earlier version of the Act, a Claimant must have been released from prison subsequent to the effective date of the Act in order to have a cause of action under the Act. Although the Court was under the impression (as noted above) that this was a case of first impression, the issue was present but not dealt with in *Munroe, supra*, and *Smith, supra*, the latter wherein an award was made.

Respondent relies heavily on certain *dicta* contained in *Harpstreith* which was not necessary to the conclusion reached. Without any reasoning the Court observed that at the time the Claimant filed his claim, the later version of the Act was not in effect and therefore the Claimant would have born the burden of establishing his innocence of the "fact" of the crime by a preponderance of the evidence. (*Harpsreith, supra*, at 550.) However, by even deciding that the Claimant did not have a cognizable cause of action under the Act the Court applied the earlier version.

Five days after the *Harpstreith* opinion was filed the Court rendered the decision in *Mostafa v. State* (1975), 30 Ill. Ct. Cl. 567. The Claimant therein had been imprisoned from May 6, 1969, to February 2, 1972, and filed his claim on July 31, 1972 (all prior to passage of the

amended version of the Act). He obtained a pardon on the grounds of innocence in May of 1974. The Court found as follows:

"Since the Claimant in this instance has received such a pardon, the sole obligation of the Court is to find the amount that is due the Claimant and also fix the attorney's fees that should be paid by Claimant." *Mostafa, supra,* at 569.

It is therefore clear that it was decided under the later version of the Act. Procedurally, *Mostafa,* is the same as the case at bar, except for the fact the docket does not reflect that it was ever continued generally to allow the Claimant time to attempt to obtain a pardon and the fact that the Respondent stipulated to the granting of an award therein.

*Pirovolos v. State* (1976), 31 Ill. Ct. Cl. 82, was the next decision to be rendered on an unjust imprisonment case. The Claimant was released from prison on June 18, 1970, filed his claim on February 14, 1972 (again all prior to the effective date of the later version of the Act), and after a general continuance was allowed to enable Claimant to try to obtain a pardon, did receive a pardon on September 21, 1974. The Court applied the amended version of the Act in granting Claimant's motion for judgment on the pleadings in making an award. Procedurally, this case is also similar to the case at bar.

*McCray, supra,* and *Dillard, supra,* were the next two unjust imprisonment cases to be decided. Although these cases were filed shortly after the Act was amended, both Claimants had been released from prison while the original version of the Act was in effect. During the aforementioned general continuance both had obtained pardons on the grounds of innocence. Joint stipulations by the parties as to facts and to the making of an award were filed, and accordingly the Court granted compensation on September 22, 1976. In so doing the Court applied the amended version of the Act.

Seven months later the next unjust imprisonment case was decided, *Coffey v. State* (1977), 31 Ill. Ct. Cl. 350. Although the claim was filed prior to the effective date of the amended version of the Act, the Court again applied the amended version in deciding the case.

Less than two months later the opinion in *Hammond v. State* (1977), 31 Ill. Ct. Cl. 362, was filed. The Claimant had been released from prison on October 8, 1969, and filed his claim on August 3, 1972. There was no mention of a pardon ever having been received and the docket indicates that nothing happened in the case between October 10, 1972, and the date of the opinion. The Court applied the original version of the Act without explanation and made an award. One month later, in a case filed before the statutory change, the Court rendered the opinion in *Dixon v. State* (1977), 32 Ill. Ct. Cl. 36, and again applied the original version of the Act without explanation or mention of a pardon.

On May 12, 1978, *Young v. State*, 32 Ill. Ct. Cl. 78, was decided. The Claimant had been released from prison in the late 1960's and filed his claim sometime in 1972. Although the docket sheet indicates that it was filed on December 15, 1972, the file contains documents predating the effective date of the amended version of the Act. The case was continued generally at the same time as the case at bar to permit the Claimant to attempt to obtain a pardon. Claimant did not obtain the pardon but moved for restoration to active status arguing that a pardon was unnecessary because an appellate court had reversed his conviction. The Court found that:

"[I]n failing to obtain a pardon on the grounds of innocence since September 5, 1972, when this cause was continued generally to permit him to do so, Claimant has failed to prosecute this action. The Court further finds that in the absence of a pardon on the grounds of innocence, it is without jurisdiction to consider this claim." (*Young, supra*, at 79, 80.)

Earlier in that case the Court stated that the amendment had made a pardon on the grounds of innocence a condition of jurisdiction.

Less than four months later, *Miller v. State* (1978), 32 Ill. Ct. Cl. 444, was decided. Claimant Miller was released from prison on November 19, 1970, and filed his claim on May 17, 1971. Just as in *Harpstreith, supra*, the Court recalled the problems it faced under the older version of the Act and without providing a rationale stated:

"However, at the time Claimant instituted this action, this amendment was not in effect, and Claimant therefore bears the burden of establishing by a preponderance of the evidence, his innocence of the 'fact' of the crime for which he was imprisoned (citing *Harpstreith, supra*)." (*Miller, supra*, at 448.)

The Court applied the *Dirkans* rule and denied the claim. No mention was made of a pardon or a general continuance to get one. *Miller* too is similar to the case at bar with respect to the time periods of the release and filing date.

The cases cited above all involved situations where the Claimant was released from prison prior to the effective date of the amended version of the Act and most were filed before that time. There is no pattern nor does one case appear to overrule another. Other than the mere statement that because a certain claim was filed before the change in the law the earlier version would apply, there was no rationale given for application of one version or the other. In *Harpstreith, supra*, the Court did apply the original version in finding that the Act did not apply retroactively, but if the same rationale applied to the amended version, all of those cases pending on the effective date of the amended version should have been dismissed.

With this precedential background we now must

decide the first issue in the case at bar. Because the previous decisions have clearly been inconsistent in their interpretations and application of the Act, we do not feel constrained to follow a certain precedent. However, we do not think the issue should be decided from a *tabula rasa* either. We feel that the proper decision should be based upon the intent of the legislature, policy, and historical experience.

When the original version of the Act was first passed, the Court foresaw the difficulties which would be encountered in the course of litigation and attempted to hold the claims in abeyance until the language could be clarified. (See the interim order entered in *Dirkans, supra,* quoted above.) Any change at that time clearly would have been applied retroactively because there would have been no other purpose for the order. The three years of experience of deciding cases based on the *Dirkans* rule illustrated the foreseen difficulties. Also in *Dirkans,* the Court made known what constructive changes should be made by comparing New York's version of the statute and commenting that a great burden on the Court could be easily and effectively lifted and the legislative goals of compensation to truly innocent parties and denial of compensation to guilty persons could be furthered. Although not with the alacrity originally envisioned by the Court, the legislature did acquiesce and changed the statute in accordance with the suggestions made in *Dirkans.*

Following the effective date of the amendment, the first occasion the Court took to rule on the legal effect of the amendment was the unpublished order by Judge Burks in *McCray, supra,* and *Dillard, supra,* which continued those claims generally. The order contains a discussion of the Court's experience with the original

version of the Act and the Court's personal knowledge of the legislative intent. The lengthy comments contained therein were expressly made for general informational purposes, future reference, and to provide guidance in similar cases.

In that order the Court held that the amendment was both retroactive and jurisdictional. Interestingly, the Claimants were contending that the amendment was substantive rather than procedural in effect, and that a retroactive application would deprive them of a vested property right. Addressing that argument the Court stated:

"After carefully analyzing the cases cited by the parties, we must conclude that the claimants had no vested property rights which were denied them by the amendment to Sec. 8(c). We believe the applicable rule is that stated by the Illinois Supreme Court in *People v. Lindheimer*, 371 Ill. 367, 21 N.E.2d 318, 321.

(Vested rights) 'must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of demand, or a legal exemption from a demand made by another. If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws, these individuals have no cause to complain.'

In the case at bar, claimant's rights under the old Sec. 8(c) would not be 'vested' until they had been adjudicated by this court."

They had not yet "proved their innocence of the crime" in the Court of Claims, as the version of the Act under which they were claiming their right to compensation had required.

The Court went on to discuss the problems it had faced with proof of innocence under the earlier version and said that it was to *remedy* those situations that the amended version was enacted. The legislature could have repealed the Act outright and made no provision whatsoever for compensating prisoners who served time unjustly. If it had done so, the effect would have been

to obliterate the cause of action completely as if it had never been passed. Instead, the Court said, the Act was amended by creating a different and, what is thought to be, a better *procedure* by which this Court can be satisfied as to a claimant's innocence:

"We believe the legislature felt that the Parole and Pardon Board, with its comprehensive records on every prisoner and its investigative powers, should first make a recommendation to the Governor for a pardon 'on the grounds of innocence', and the pardon be issued as a condition precedent to an action for damages in this court.

The legislature obviously felt that the Governor would issue what amounts to a 'Certificate of Innocence' if the record clearly indicates that the prisoner was in fact not guilty of any crime that could have resulted in his imprisonment."

Pursuant to article V, section 12, of the Illinois Constitution of 1970, whether or not a prisoner receives the pardon lies purely in the realm of gubernatorial discretion and such discretion is unfettered by legal technicalities and evidentiary problems.

In addition to finding the amendment procedural, the Court also found it to be jurisdictional. Upon the effective date of the amendment, the Court felt that its jurisdiction to hear and determine only such claims based upon unjust imprisonment immediately changed and it then had jurisdiction to hear and determine only such claims as were filed in conformity with the amended version of the Act. In this regard the Court noted that it would therefore be appropriate to dismiss the claims with leave to reinstate upon compliance with the jurisdictional requirement, but it did not do so for reasons of convenience only. Rather, it put the claims on general continuance. Significantly, it also noted that a general continuance would be unnecessary to toll the statute of limitations. Compare *Harpstreith, supra.*

We find the Court's discussion in that order of the effect of the amendment persuasive. We think that the

intent of the legislature as described therein was accurate. The Court had the benefit at that time of personal contact with the legislature and personal knowledge of what it had intended to do. From both the policy perspective and the perspective of the historical experience of the Court of Claims, application of the amended version of the Act is a more desirable and better procedure on the whole, arguments of the Respondent, to the effect that legislative confidence in the Prison and Parole Board and the Governor was misplaced, notwithstanding. We think that if we were to hold that the original of the Act applies we would be perpetuating a burdensome and problematical situation thought to have been remedied long ago. Accordingly, we hold that the case at bar should be decided under the amended version of the Act.

Having decided that the amended version of the Act applies, the next step in this case is to determine whether the person imprisoned, the Claimant, received a pardon from the Governor on the grounds of innocence of the crime for which he was imprisoned. The record is clear that on December 20, 1974, Governor Walker issued such a pardon. However, Respondent contends that under the Constitution of the State of Illinois of 1970, the Governor exceeded his authority in granting the pardon. The Constitution provides as follows:

"The Governor may grant reprieves, commutations, and pardons, *after conviction*, for all offenses on such terms as he thinks proper. The manner of applying therefore may be regulated by law." (Emphasis added.) (Ill. Const. 1970, art. V, sec. 12.)

Respondent reasons that because of the appellate court's reversal of Claimant's conviction and his subsequent acquittal at trial, Claimant technically and legally stood convicted of nothing at the time the pardon was granted

and therefore the pardon was not granted "after conviction," nor was there anything for which Claimant could be pardoned.

This is the first instance that this precise issue has been raised in this Court, although it would seem to have been similarly present in one form or another in nearly every claim brought under the Act after it was amended. In not one of the cases ever decided in this Court since the cause of action was first created in 1959, do the records indicate that a person was released from a State prison solely by virtue of a pardon by the Governor. In only one case, *Harpstreith, supra,* was a pardon granted while a conviction still stood. In that case the pardon was granted approximately 20 years following the Claimant's release from prison, and was not based upon his innocence of the crime for which he was imprisoned, but on his "twenty years of service on the life sentence before parole eligibility occurred, plus the good record maintained during the nineteen years since his release on parole." (*Harpstreith, supra,* at 547.) In every other case where a person had been convicted at one time and a pardon was granted, it was granted after the conviction had been removed by post-trial relief obtained through the courts, *e.g.,* convictions reversed on appeal (*McCray, supra; Dillard, supra; McKibben v. State* (1977), 32 Ill. Ct. Cl. 147; *Harling v. State* (1978), 32 Ill. Ct. Cl. 125.) In one case where the Claimant had what would seem to be the ideal factual situation in his favor, new evidence in the form of a confession by another to the murder of which the Claimant was convicted, a motion for a new trial was filed. After evaluation by the State's Attorney the motion was acquiesced in, the court granted it, and the State then nolle prossed the charges. He was then granted a pardon. (*McDonald v. State* (1980), 33 Ill. Ct. Cl. 45.) It is clear that issue is of

importance not only in this case but, as historically foreshadowed, future potential claims as well.

The initial question which must be answered in deciding the issue is whether or not this is the proper forum in which to raise it. It is the Claimant's position that it is not. He contends that the appropriate place for such an issue to be argued is at the hearing on the pardon and, regardless of whether or not the pardon should have been given, the fact is that it was and is now part of the record.

Claimant apparently was referring to the hearing procedure before the Parole and Pardon Board, which, at the time Claimant applied for his pardon, was empowered to make recommendations to the Governor as to whether or not a pardon should be granted, pursuant to the grant of authority contained in section 3—3—13 of the Unified Code of Corrections. (Ill. Rev. Stat., ch. 38, par. 1003—3—13.) This statute provided as follows:

"Sec. 3—3—13. Procedure for Executive Clemency.

(a) Petitions seeking pardon, commutation or reprieve shall be addressed to the Governor and filed with the Parole and Pardon Board. The petition shall be in writing and signed by the *person under conviction* or by a person on his behalf. It shall contain a brief history of the case and the reasons for executive clemency.

(b) Notice of the proposed application shall be given by the Board to the committing court and the state's attorney of the county where the conviction was had.

(c) The Board shall, if requested and upon due notice, give a hearing to each application, after which it shall, without publicity advise the Governor by a written report of its *recommendations* which shall be determined by a majority vote. The Board shall meet to consider such petitions no less than 4 times each year.

(d) The *Governor* shall decide each application and communicate his decision to the petitioner and to the Board." (Emphasis added.)

As the Claimant pointed out at oral argument, several people are supposed to be given notice of the

application for the pardon and presumably would be allowed to be present and to argue at a hearing. The Attorney General is not one of those people who are to be notified. As the law currently reads, in certain instances the sheriff of the county from which the offender was sentenced and certain municipal law enforcement officials are also entitled to notice, but only after a pardon has been granted. However, in view of the Illinois Supreme Court's opinion in *Smith v. Jenkins* (1927), 325 Ill. 372, 156 N.E. 290, it is at least open to question whether these notice provisions, if challenged, can pass constitutional muster. Interpreting a provision of the Constitution of 1870 granting the Governor pardon powers which is substantially similar to the present pardon provision, the Court stated:

"The only restriction which the legislature may impose upon the Governor's power refers to regulations relative to the manner of applying for reprieves, commutations and pardons, and the act on that subject does not purport to, and does not, restrict the Governor's authority except to that extent. The giving of statements or opinions by the judge or prosecuting attorney is not made a condition precedent to the Governor's action, and the requirement of them does not hamper his freedom in any way, for the Governor may act without such statements for any reason satisfactory to him. The publication of notice may also be dispensed with by the Governor when, in his judgment, justice or humanity requires." *Smith, supra,* at 291-92.

The supreme court has also examined the nature and duties of the Parole and Pardon Board. In *Abner v. Kinney* (1964), 30 Ill. 2d 201, 195 N.E.2d 651, the Court said:

"The Parole and Pardon Board has two separate and distinct functions. One is to act as the Governor's agent in hearing applications for executive clemency, in which the Board has no power to grant a pardon, reprieve or commutation, but merely to submit a recommendation to the Governor, who is free to accept or reject the recommendation. The other is when it sits as an administrative body with the power to make final decisions in parole matters. The latter power has been granted it by the legislature." (*Abner v. Kinney, supra,* at 205.)

Using the Court's analogy to agency principles, the Parole and Pardon Board, when functioning in the

former capacity mentioned above, was but an extension of its principal, the Governor, with the persons it dealt with on notice that its authority was ultimately qualified or limited. It could only make recommendations and its recommendations were in no way binding.

Moreover, there were no statutorily or judicially defined standards of persuasion for the decision-making processes of the Parole and Pardon Board. It was free to make a recommendation either way on any petition. (See Attorney General's Opinion No. S—727, issued March 22, 1974.) As explained therein, the General Assembly intentionally declined to formulate substantive standards to guide the Parole and Pardon Board in the performance of its duties regarding pardons because it recognized that since the Governor is free to accept or reject the recommendations of the Board, he should be the one to formulate · substantive standards for its operations insofar as pardons are concerned, and it decided that any attempt by the legislature to set substantive standards might be construed as an unconstitutional infringement upon the pardoning power granted to the Governor. By the same reasoning, recommendations by the Board and decisions by the Governor concerning pardons were not subject to judicial review under the terms of the Administrative Act, nor are recommendations made by the Board's successor agency and decisions by the Governor reviewable under the terms of Article III of the Code of Civil Procedure, the legislation succeeding the Administrative Review Act.

Although it may have been an appropriate place in which to begin, we do not think that the Parole and Pardon Board was the exclusive forum for making the argument raised in this case. To find otherwise would be

tantamount to saying that the Governor was the sole interpreter of the extent of his constitutional authority. Pardons have been challenged in other forums in this State, including the Court of Claims.

In *Deneen v. Gilmore* (1905), 214 Ill. 569, 73 N.E. 737, and *Johnson v. George* (1900), 186 Ill. 122, 57 N.E. 804, the supreme court held that attorneys might be disbarred because of a conviction of a crime involving moral turpitude, notwithstanding the fact that a pardon had been granted prior to the institution of the disbarment proceeding. Although the court in *Gilmore* also found misconduct after the pardon, the court in *George* found the pardon to have little or no effect on the moral character required for the practice of law. It stated:

"But the pardon could not efface the moral turpitude involved in the crime. It could not obliterate the moral stain upon his character. That remains." *George, supra,* at 806.

The *George* case arose as a result of an information being filed against the respondent therein and was before the court on a rule to show cause. *Gilmore* was before the court on a petition for disbarment originally filed there.

In *People v. Rongetti* (1946), 395 Ill. 580, 70 N.E.2d 568, *rehearing denied* (1947), the defendant was convicted of practicing medicine without a license. One of the issues raised was whether or not he had a right to practice medicine by virtue of a pardon granted by the Governor, restoring his rights of citizenship, which had been forfeited by a prior conviction of manslaughter. The supreme court made a determination as to the effect of the pardon on his later conviction and declined to accord it the effect claimed by the defendant.

In *Symonds v. Gualano* (1970), 124 Ill. App. 2d 208,

260 N.E.2d 284, the issue presented was whether or not the restoration of the defendant's rights of citizenship, granted by the Governor, removed his ineligibility to hold public office created by his prior convictions for an infamous crime. The appellate court decided that the effect of the pardon was such that the ineligibility was removed. Its decision was on an appeal of an order, entered pursuant to the mandate of the appellate court, ousting the defendant from public office. The defendant had obtained a pardon after the mandate.

In *People v. Chiappa* (1977), 53 Ill. App. 3d 639, 368 N.E.2d 925, the defendant had been found guilty of involuntary manslaughter following a jury trial. Subsequent to this conviction, but before oral argument of the appeal of the conviction, he received a pardon from the Governor. The penultimate issue on appeal was whether the appeal had been rendered moot due to the pardon.

In *People v. Glisson* (1978), 69 Ill. 2d 502, 372 N.E.2d 669, the supreme court was called upon to decide the effect of a gubernatorial pardon on a petition for expungement made pursuant to section 5 of "An Act in relation to criminal identification and investigation." (Ill. Rev. Stat., ch. 38, par. 206—5.) The petitioner had been convicted, subsequently received a pardon, and sought an expungement order from the circuit court. The circuit court granted the petition, the order was affirmed on appeal, and the supreme court granted *certiorari*. The issue involved the language in the expungement statute cited above limiting the availability of expungement to those persons "not having previously been convicted of any criminal offense or municipal ordinance violation, (who have) been charged with a violation of a municipal ordinance or a felony or

misdemeanor, (and are) acquitted or released without being convicted." In deciding the effect of the pardon with respect to the expungement statute, the court stated that, "The petitioner, because of his conviction, is obviously beyond the statute's reach."

The litigation over the pardons involved in the cases discussed above involved the *effect* that was to be accorded the pardons. The authority of the Governor to grant the pardons was not challenged nor were the pardons themselves. The only reported case from the judicial system on the authority of the Governor to grant pardons in absence of an outstanding conviction which we could locate dates back to 1846. In *Ex parte Birch* (1846), 8 Ill. 134, the Illinois Supreme Court, acting on a petition for a writ of *habeas corpus* stated that the Governor cannot pardon before conviction according to the Constitution of the State of Illinois as it then existed. In that case, however, the court was not sitting in review of a *fait accompli* of the Governor in that it was not being asked to overturn a pardon already granted, but acting on a petition of a prisoner to be released instead of being tried for an offense for which he alleged entitlement to be pardoned.

At the least, it can be concluded from those cases discussed above that the proper forum for deciding the effect to be given a pardon is any court having jurisdiction over the cause of action wherein the effect of the pardon is at issue. Clearly, then, the Court of Claims is a proper forum for the Respondent to litigate the effect to be given to a pardon in a claim for unjust imprisonment.

We turn now to the merits of the Respondent's argument. It is uncontested that the Claimant did receive a pardon from the Governor on the grounds of

innocence of the crime for which he was imprisoned. We think it a proper determination for this Court to make as to what effect this pardon is to have on the claim at bar. A plain reading of the Act would seem to indicate that the Claimant has demonstrated his entitlement to an award thereunder. However, we decline to accord the pardon that effect. We agree with the Respondent that the Governor was acting beyond the scope of his authority in granting a pardon under the circumstances involved here. The Governor is only authorized by the Constitution to grant a pardon after there has been a conviction, and the Claimant stood convicted of no crime at the time pardon was granted. Our position herein is consistent with that in *Coffey v. State*, wherein the Court stated:

"Thus, the Governor's power to pardon for an offense is expressly conditioned upon there having been a conviction for that offense, and the jurisdiction of this Court to entertain a claim for unjust imprisonment is expressly conditioned upon a Claimant first having received a pardon. It, therefore, appears self-evident that we cannot entertain a claim for unjust imprisonment unless there has first been a conviction, and then a pardon issued in accordance with ... the Constitution, which conditions the Governor's power to pardon upon the existence of a conviction." *Coffey v. State* (1977), 31 Ill. Ct. Cl. 350, 352.

In maintaining this position we are not reviewing and overturning a purely discretionary act of the Governor. Obviously, this Court cannot act in such a manner. We have not and will not consider the merits of the Governor's actions. In declining to give the Governor's pardon its purported effect *vis à vis* the Act, we are fulfilling the Court's role as an advisory body of the legislature.

For the reasons stated herein, it is hereby ordered that this claim be, and hereby is, denied.